RUFFIN LEE et al. v. ANNA B. WILLIAMS et al.

*Exceptions—Appeal—Trial—Will—Evidence.*

1. Exceptions to the refusal of the Court to grant a prayer for instructions, or in granting a prayer, or to instructions generally, cannot be taken for the first time in the Supreme Court; properly, they should be made on a motion for a new trial, but it is sufficient if they are assigned in the statement of the case on appeal.

2. Upon the trial of an issue *devisavit vel non*, the caveators offered testimony tending to show that the testator had made a will devising his property to propounders—a second wife and her daughter—to the exclusion of his children by a former marriage; that subsequently he became dissatisfied with its provisions and expressed a purpose to alter it and make some provision for his children; that the wife had possession of the instrument and would not produce it, and that she, at times, was not kind to him, and that testator died without making any alteration in his will. There was no other evidence of threats or undue influence: *Held*, that it was error to submit the testimony to the jury, as it contained no evidence to support the allegation that the paper was not a valid will.

Issue of *devisavit vel non*, tried at Fall Term, 1891, of ORANGE Superior Court, before *Winston, J.* Judgment for the caveators. Appeal by the propounders.

The following is so much of the evidence as need be set out:

Ben Howard: "Deceased said to me that he 'had made a will; Mr. Parrish wrote it; willed all to his wife Jane, and if he lived to see Monday he was going to send for Mr. Parrish to come and alter it;' Jane then came into the room; she was about 'half snapped' (which he explains to mean drunk); he told Jane to please go out; she did so; she then came back twice and said she had toothache; deceased said, 'You disturb me so I can't have any peace with my friends;' said to me he had left all to Jane and Annie, and was dissatisfied, and was going to alter it Monday; that his daughter Sallie had run away and married a man he did not like, else he would have left her his property; none of deceased's family lived with him since he married Jane—disagreeable for them there," &c.

Ellen: "Often visited deceased; Jane was very kind to him; after he got sick she was very ill to him; I said to him that I had heard he had not willed his children anything; he said, 'Yes, I was very mad then, but now I think they ought to have something, and I want to see Mr. Parrish and

have it changed;' was dissatisfied now with the will; said his wife was not the woman he took her to be; did not say how or why that he treated her bad."

William Allison: "Son of deceased; father said to me, ' I was mad when I made the will, and am dissatisfied; you were gone and the children were gone; I could not hear from you, but now I want it changed.' After that Mr. Parrish came, and Jane said, ' Don't change the will, and I will give William a lot on the hill;' deceased could not get the will, because his wife had locked it up; Jane, the wife, said, 'If I go away, you children will throw me out of the house;' father told me after Christmas that Jane treated him like a dog; she was drunk at that time; I ran away because step-mother treated me bad in 1885."

· William Rogin : " Deceased told me that the will did not satisfy him ; that he made it to keep peace and on account of his wife; that he wanted to see Howard and was going to have it altered ; Jane then had toothache."

*Mr J. W. Graham*, for caveators.
*Mr. C. D. Turner*, for propounders.

MACRAE, J.: The following is the issue presented to the jury: ''Is the paper-writing, or any part of same, propounded for probate; and if so, what part, the last will and testament of Augustus E. Allison, deceased? ''

The propounders rested after proving the formal execution of the instrument, which was not controverted.   The ground upon which the validity of this instrument as a will was impeached, was "that its execution was procured by the undue influence of Jane Allison, *alias* Jane Wheaton, and the said Augustus Allison was prevented by the conduct and threats and undue influence of said Jane Wheaton from altering and canceling said paper, as he desired and intended to do."

LEE *v.* WILLIAMS.

The caveators examined several witnesses offered in support of their contention, and, having closed, "his Honor stated that if the jury should set aside the will on the testimony, the Court would be compelled to set the verdict aside, and in order that the caveators may have full benefit of the exception, the Court will charge the jury that the proof is not sufficient to go to the jury. The caveators ask to have the jury pass upon the matter anyway, and the Court again says: 'Well, gentlemen, you may do so if you choose, but you have the views of the Court.'" Thereupon the *propounders* called additional witnesses.

We have carefully examined all the testimony, as reported in the case on appeal, and we concur in the opinion expressed by his Honor when the caveators closed. It was a useless consumption of time and protraction of the trial by the propounders to have introduced further testimony, and we can see nothing in the additional evidence offered, on both sides, which should have changed the view already expressed by his Honor. The testimony is voluminous and extended, and no good purpose would be subserved by setting it out here; but there was no testimony which in itself tended to establish the fact either of threats or of undue influence. The counsel for the propounders, however, presented no request in writing for a special instruction to that effect, though he seems to have made it orally at the close of the caveator's testimony and again during his argument.

Section 415 of *The Code* provides that " counsel praying of the Judge instructions to the jury, shall put their requests in writing, entitled of the cause, and sign them; otherwise the Judge may disregard them."

The authorities on the subject are so numerous that we will cite only the last cases, *State* v. *Horton,* 100 N. C., 443, and *Posey* v. *Patton,* 109 N. C., 455.

There are several exceptions to the charge of his Honor, all of which but the one we shall notice hereafter are without merit, and indeed were not relied upon in this Court.

His Honor instructed the jury, among other things: " If the jury believe that the will was executed by the deceased in his life-time, a man capable of making a will, that is, of sound mind and disposing memory, and the same was witnessed by James Norwood and Calvin E. Parrish, who signed the same as witnesses at the request and by the direction of the deceased and in his presence, then the Court charges you that this is the last will and testament of Augustus E. Allison, the deceased, unless the caveators have shown you from the evidence that the will was procured by the undue influence and conduct of the witness Jane Allison exercised over the deceased." To this the propounders except.

By section 412, subsec. 3 of *The Code*, it is provided: "If there shall be error, either in the refusal of the Judge to grant a prayer for instructions, or in granting a prayer, or in his instructions generally, the same shall be deemed excepted to without the filing of any formal objections." This section is not to be construed to permit an exception to be taken for the first time in the Supreme Court, but it is sufficient if set out in appellant's case on appeal, although the proper method of taking advantage of it is to assign error on a motion for a new trial. Clark's Code, 2d Ed., p. 382. Here we find an exception noted and an assignment of error in this particular; and we hold the exception well taken, although the propounders could not take advantage of the refusal of his Honor to give the instruction asked, because it was not in writing, as required by the statute.

The error in the charge is in leaving it to the jury to decide whether the caveators had shown from the evidence that the will was procured by the undue influence and conduct of the witness Jane Allison exercised over the deceased, when there was no evidence to go to the jury to enable them to find such to be the fact. If there had been any evidence, however slight, it would have been the duty of his Honor to submit it to the jury, and if they should

have found against its weight, it would have been in his discretion to have set the verdict aside; but that province does not belong to this Court, and we could not have disturbed it.

The evidence in this case was not sufficient to raise a conjecture, and was an insufficient foundation for a verdict, and therefore was no evidence to be left to the jury. *State* v. *Vinson*, 63 N. C., 335.

Although it was not error to refrain from giving instructions, unless they are asked, yet care must be taken when the Judge thinks it proper, of his own motion, or at the party's, to give them, that they be not in themselves erroneous, or so framed as to mislead the jury. *Bynum* v. *Bynum*, 11 Ired., 632; *Burton* v. *Railroad*, 84 N. C., 192.

New Trial.                                         Error,