IN THE MATTER OF THE WILL OF M. W. BALL.

(Filed 11 April, 1945.)

**1. Wills § 23c—**

On the trial of an issue of *devisavit vel non*, where the evidence of caveators, considered in the light most favorable to them, tends to show that, at the time of and prior to the execution of the will, the testator suffered from chronic ailments, used narcotics, was mentally weak, and possessed a poor memory, there is no evidence of undue influence.

**2. Wills § 23b—**

Evidence of mental or physical condition, standing alone, is not evidence of undue influence. It is merely evidence of a circumstance to be considered by the jury in connection with, and as it may lend weight to other testimony.

**3. Wills §§ 23b, 23c—**

Where there is proof, direct or circumstantial, of undue influence, then evidence of old age, mental and physical weakness is pertinent and material.

**4. Same: Evidence §§ 42b, 43a—**

Evidence of declarations of the testator, which disclose his state of mind at the time of the execution of the paper writing or the circumstances under which it was executed, tending to show he did or did not act freely and voluntarily, is competent as substantive proof of undue influence. Other declarations, when relevant, may be admitted as corroborative or supporting evidence, but alone they are not sufficient to establish the fact at issue.

**5. Wills § 23c—**

Testimony that a wife importuned her husband to make a will in her favor, after such a will had been executed by him, is not evidence of undue influence.

**6. Same—**

The fact that testator gave his property to the childless wife of his bosom to the exclusion of his sister and his nephews and nieces is no evidence of undue influence.

APPEAL by caveators from *Parker, J.*, at November Term, 1944, of CRAVEN. No error.

Issue of *devisavit vel non.*

Shortly prior to November, 1929, Dr. M. W. Ball, in the adjustment and settlement of the estate of R. H. Wright, came into possession of property of considerable value. On 19 November, 1929, he executed the paper writing propounded in which he named his wife as his sole beneficiary and executrix. He had no children.

The testator died in July, 1943, and his wife, Mary Todd Ball, quali-
fied as executrix and entered upon the administration of his estate.    She
died in January, 1944.    Her sister, Nina T. Dickinson, then qualified as
administratrix *c. t. a.*    On 24 May, 1944, the caveators, collateral rela-
tives of the testator, appeared and filed a caveat.    During the progress
of the trial they formally conceded that the paper writing was duly
executed by Dr. Ball as his last will and testament as required by statute
and at the time of its execution the testator possessed sufficient mental
capacity to make and execute a will.    They contend that the execution
thereof was procured by the undue influence of his wife, Mary Todd
Ball.    This is the only contested issue of fact.

The caveators offered evidence tending to show the following facts:

From about 1925 until his death the testator had bladder and gall
bladder trouble and suffered from angina pectoris.    As a result he had
become more or less addicted to the use of narcotics, was weak mentally
and physically, his memory was bad at times, and his mental machinery
would run down but would revive when he took dope.    His wife was
present when he executed the will but said nothing.    In the summer of
1929 Mrs. Ball asked Dr. Ball several times to make a will and leave his
property to her.    Dr. Ball said Mary wanted the property so she could
give it to Nina, and he did not want Nina to have it.    As early as
December, 1929, he was heard to say that he wanted his wife to have
the Wright property for life and after her death he wanted it to go to
his people.    This statement was repeated in substance each year there-
after until 1938.    In 1930-31-32-33 he said Mary had importuned him
to make a will giving her his property.    In 1930 he said he wished he
had not gotten the Wright property.    His wife had worried him to death
about it.    In the 1930's when they went for a pleasure ride Mary would
decide where they should go.    In 1932 he said he wanted to make contact
with attorneys to make a will giving his wife the Wright property for
life with remainder to his people but he had been deprived of doing so
by the demands of Mary (his wife).    On 26 August, 1932, he testified
in a cause pending in Durham County that he was not normal, was not
in his right mind when he signed an agreement 21 April, 1932; that he
had been in very bad health for about one and one-half years; that on
account of his condition he took narcotics which made him drowsy and
his memory bad.    In 1936 he had two automobile accidents and was on
each occasion apparently under the influence of narcotics.

On the contrary there was evidence both from witnesses for the pro-
pounder and the caveators that Dr. and Mrs. Ball were very congenial,
that each looked after and cared for the other, that he did not use
narcotics to excess until the latter part of his life, and that he was an
intelligent professional man in full possession of his faculties.

The court submitted the following issues:

"1. Was the paper writing offered for probate as the last will and testament of M. W. Ball, deceased, signed and executed according to law?

"2. If so, did the said M. W. Ball have mental capacity to make a will on the 19th day of November, 1929?

"3. If so, was the execution of said paper writing procured by undue influence?

"4. Is the paper writing propounded by Mrs. Mary Todd Ball, and every part thereof, the last will and testament of M. W. Ball, deceased?"

It gave a peremptory instruction in favor of the propounder on each issue. The jury answered the first issue "yes," the second issue "yes," the third issue "no," and the fourth issue "yes" in accord with the instructions of the court. There was judgment on the verdict and caveators appealed.

*R. O. Everett, Kathrine R. Everett, J. J. Lewis, and L. T. Grantham for caveators, appellants.*

*L. I. Moore and R. E. Whitehurst for propounder, appellees.*

BARNHILL, J. Mrs. Delia Zimmerman, one of the caveators, offered to relate a conversation with Mrs. Ball, the beneficiary. This alleged conversation took place in 1933, approximately four years after the will was executed. At the time of the trial Mrs. Ball was not living. The evidence was excluded. It relates to proposed future conduct of Mrs. Ball and is of such slight and doubtful probative force we need not decide whether technically there is error in the ruling. In any event its exclusion was not prejudicial. *Lee v. Williams,* 111 N. C., 200.

In seeking for any possible evidence of undue influence we have given a somewhat extensive summary of the testimony in behalf of caveators. We have considered excluded testimony without regard to its competency. Hence we need not discuss or decide other exceptions directed to alleged error in rulings upon the admissibility of testimony.

This brings us to the one decisive question presented on this appeal. Did the court err in charging the jury there was no evidence of undue influence?

Considered in the light most favorable to caveators the testimony tends to show that at the time of and prior to the execution of the will in 1929 the testator suffered from chronic ailments, used narcotics, was mentally weak, and possessed a poor memory.

When there is proof, direct or circumstantial, of undue influence, then evidence of old age, mental and physical weakness is pertinent and material. It is admitted upon the theory that a person of that type or in that condition can be influenced with more ease than one of strong

mind and body. But evidence of mental or physical condition standing alone is not evidence of undue influence. It is merely evidence of a circumstance to be considered by the jury in connection with and as it may lend weight to other testimony. When caveators prove susceptibility to undue influence, they establish opportunity—a field fit for cultivation. This alone is not sufficient.

"The general rule established by the overwhelming weight of authority is that declarations of testator not made contemporaneously with the execution of the will, or so near thereto as to constitute a part of the *res gestæ*, are not competent as direct or substantive evidence of the truth of the matters therein stated, when offered on the issue of undue influence inducing the execution of the will. If offered as direct or substantive evidence of an external fact, such as undue influence or fraud, statements of testator are mere hearsay, and are liable to all the objections to which mere declarations of third parties are subject. There must be proof of other facts and circumstances tending to prove circumvention or fraud in the procurement of the will, in order that declarations of the testator may be considered at all upon the issue of undue influence. And for the purpose of proving undue influence inducing the execution of a will, the testator's declarations are of themselves without the least force." Anno. 79 A. L. R., 1449.

While we have held, in apparent conflict with the general rule, that declarations of the testator which go to show testator believed the contents of his will to be different from what they are, or other circumstances which show that it is not his will, are competent whether made before or after the occurrence; *Reel v. Reel,* 8 N. C., 248; *In re Fowler,* 159 N. C., 203, 74 S. E., 117; *Linebarger v. Linebarger,* 143 N. C., 229; *In re Craven,* 169 N. C., 561, 86 S. E., 587; we have also held in *Craven's case, supra,* that a statement made by the testator six or eight months before the date of execution of the paper writing was not of sufficient importance to make its exclusion the proper basis for a new trial.

In *Linebarger v. Linebarger, supra,* we said it would be "an exceedingly dangerous innovation upon the statute which requires a will to be executed according to the formalities prescribed, to permit it to be set aside upon mere declarations of the testator in regard to undue influence, unaccompanied by any act on the part of any person."

So then with us the rule comes to this. Evidence of declarations of the testator which disclose his state of mind at the time of the execution of the paper writing or the circumstances under which it was executed, tending to show he did or did not act freely and voluntarily, is competent as substantive proof of undue influence. *In re Fowler, supra.* Other declarations, when relevant, may be admitted as corroborative or sup-

porting evidence, but alone they are not sufficient to establish the fact at issue. *Lee v. Williams, supra.* See also *In re Shelton's Will,* 143 N. C., 218; *In re Wellborn's Will,* 165 N. C., 636, 81 S. E., 1023; *In re Mueller's Will,* 170 N. C., 28, 86 S. E., 719; *In re Bailey,* 180 N. C., 30, 103 S. E., 896.

We find in the record no testimony showing any acts on the part of the original propounder or any other person of undue influence. There are no declarations of the testator which show or give any indication of his state of mind at the time he executed the will or of the circumstances under which he signed the same. Hence the declarations made subsequent to the execution of the paper writing propounded have no probative force as substantive evidence of undue influence.

The testator left his property to the natural object of his bounty—his wife, with whom he had lived for more than forty years. Mrs. Ball was not the controlling agency in procuring the execution of the paper writing under which she took as sole beneficiary, and she did not draft or advise the terms of·the will, and the will was not in conflict with a previously expressed intention. Nor did it revoke a prior will of difent tenor.

At the time of the execution of the paper writing, the testator was the "master of ceremonies." He went freely about his business for fourteen years thereafter with every opportunity to reform it. He elected to permit it to remain as it was. Surely these circumstances have no tendency to show that he was being coerced, compelled or unduly influenced to execute a will that did not express his then existing desire and purpose. *In re Will of Everett,* 153 N. C., 83, 68 S. E., 924; *In re Mueller's Will, supra.*

There is evidence that the beneficiary was present at the time of the execution of the will, but she said nothing. Indeed all the other testimony tends to show that she did not know or understand the nature of the instrument being executed. For many years thereafter she was "importuning" the testator to make a will to such an extent that he said she "worried him to death" about it, when at the very time the will was in existence, devising the property as she wished. Her conduct in this respect repels the suggestion that theretofore she had contrived to induce and compel him to make disposition of his property contrary to his own wishes.

That she importuned him to make a will after the paper writing had been executed is not evidence of undue influence. He was afflicted and was growing old. It was natural that she should be concerned about her own welfare after he was gone. That she was persistent in her discussion of this vital problem was not unnatural. Aside from the fact the importuning occurred after the will was executed, it falls short of proof of coercion.

Nor is the fact testator gave his property to the childless wife of his bosom to the exclusion of his sister and his nephews and nieces evidence of undue influence. *In re Peterson,* 136 N. C., 13 (27); *In re Will of Cooper,* 166 N. C., 210, 81 S. E., 161; *In re Broach's Will,* 172 N. C., 520, 90 S. E., 681.

The evidence relied on is confined almost entirely to acts, conduct, and declarations subsequent to the execution of the will. No part of it tends to show that the testator acted contrary to his then existing desire or to establish any fraudulent influence of the beneficiary controlling the mind of the testator so as to induce him to make a will which otherwise he would not have made. Hence the charge of the court is sustained by the record. *In re Will of Harris,* 218 N. C., 459, 11 S. E. (2d), 310; *In re Will of Evans,* 223 N. C., 206, 25 S. E. (2d), 556.

In the trial below we find

No error.