JOHNNIE GAYLON HARDEE, INDIVIDUALLY AND JOHNNIE GAYLON HARDEE AS ADMINISTRATOR OF THE ESTATE OF LAVELLE HARDEE, DECEASED v. WALTON E. HARDEE AND WIFE, LURA G. HARDEE, VERNA H. PARRISH AND ODELL F. HARDEE

No. 381A83

(Filed 6 December 1983)

**1. Cancellation and Rescission of Instruments § 10.2— undue influence inducing deed—sufficiency of evidence**

Plaintiff's evidence was sufficient for submission to the jury on the issue of whether a deed from plaintiff's deceased father should be set aside on the ground of undue influence where it tended to show that although plaintiff had been estranged from his deceased father for most of plaintiff's life, he had, after the death of his father's second wife in March 1980, begun to visit his father to try to establish a relationship with him; plaintiff was the deceased's only heir; the deceased was taken suddenly ill in May 1980 and diagnosed as suffering from a malignant brain tumor which was surgically removed on 26 May after which he was hospitalized until 16 June; after surgery the deceased was physically weak, mentally confused, and lacked the capacity to know or understand the nature and consequences of his actions; his mental condition never improved after the surgery; on 13 June two defendants and one defendant's husband secured the deed in question from an attorney's office and took it with them to deceased's hospital room where they secured his signature in the presence of a notary public; no one other than deceased, the two defendants, one defendant's husband, and the notary were present in the room at the time; and the deed was procured without the knowledge of deceased's attorney in fact.

**2. Evidence § 11.7— testimony barred by Dead Man's Statute**

In an action to set aside on grounds of mental incapacity and undue influence a deed executed by plaintiff's deceased father following surgery for a brain tumor, plaintiff's testimony that, at a time before his father became ill with the brain tumor, his father "stated that he would like to walk over the property lines with me so I would know where the points were" and that he and his father did walk the property in question and "look at the lines and corners" tended mostly to prove deceased's dispositive intent before his illness rather than his mental capacity and was inadmissible under the hearsay rule and the Dead Man's Statute, G.S. 8-51.

APPEAL by right from a decision of a divided panel of the Court of Appeals, 63 N.C. App. 321, 304 S.E. 2d 626 (1983), finding no error in a jury verdict for plaintiff and judgment entered thereon by *Judge Samuel Britt* at the 15 March 1982 Session of HARNETT Superior Court.

*Johnson & Johnson, P.A., by W. A. Johnson and Sandra L. Johnson for plaintiff appellee.*

*Morgan, Bryan, Jones & Johnson by Robert C. Bryan for defendant appellants.*

EXUM, Justice.

This is an action for damages and to set aside a deed conveying real property on the grounds of mental incapacity and undue influence. At trial the jury answered the mental capacity issue favorably to defendants and the undue influence issue favorably to plaintiff. The questions on appeal are whether the evidence is sufficient to be submitted to the jury on the undue influence issue and whether the trial court erred in admitting into evidence a certain conversation between plaintiff, Johnnie Hardee, and the deceased grantor. A majority of the Court of Appeals answered both questions favorably to plaintiff. Chief Judge Vaughn dissented on both questions. We hold that it was prejudicial error to admit the challenged evidence and the evidence was sufficient to be submitted to the jury on the undue influence issue. We, therefore, reverse the Court of Appeals in part and remand for a new trial.

I.

The following facts are either stipulated or uncontradicted:

Defendants Walton Hardee and wife, Lura, had four children: Lavelle Hardee, the deceased; Silas Elmer Hardee; and defendants, Odell Hardee and Verna Hardee Parrish. Plaintiff, Johnnie Hardee, is the only child of Lavelle and the grandson of Walton and Lura. In 1973 Walton divided his land among his four children, retaining a life estate. As a part of this division Walton conveyed to Lavelle a 49-acre tract which is the subject of this lawsuit.

When plaintiff Johnnie Hardee was about a year old, he left home with his mother who was estranged and ultimately divorced from his father, Lavelle. Thereafter Lavelle remarried. Johnnie did not get along with his father's second wife, Betty, and never again after moving away lived with his father. He was estranged from his father until Betty Hardee died in March 1980. After her death Johnnie began to visit his father every week or so.

Lavelle Hardee was a perfectly normal, healthy, outgoing, and friendly man until early May 1980 when he began to complain to family members and associates of severe headaches. His employer, David Stroud, who was also a close friend, noted Lavelle's complaints about headaches and some unusual abnormalities in the manner in which Lavelle performed his work as an automobile mechanic.

On 25 May 1980 x-rays revealed that Lavelle suffered from a large brain tumor which was surgically removed on 26 May and diagnosed to be malignant. After the surgery Lavelle continued to be hospitalized until he was discharged on 16 June 1980. He died intestate on 21 September 1980. Plaintiff is the duly qualified administrator of his father's estate.

While hospitalized post-operatively, Lavelle, on 9 June 1980, executed a power of attorney in favor of David Stroud which was filed in the Harnett County Registry on 10 June 1980. On 13 June, Lavelle executed and delivered to his parents, Walton and Lura Hardee, a deed to the 49-acre tract which Walton had earlier conveyed to Lavelle in 1973 and in which Walton had reserved a life estate.

On 10 July 1980 Walton and Lura Hardee executed and delivered a deed to this 49-acre tract to defendant Odell Hardee and Verna Hardee Parrish.

Other evidence in the case will be summarized below in our discussion of the legal question to which it relates.

At trial the dispositive issues were submitted to and answered by the jury as follows:

1. Did Lavelle Hardee on June 13, 1980 lack mental capacity to execute the deed from Lavelle Hardee to Walton E. Hardee and wife, Lura G. Hardee?

Answer: No.

2. Was Lavelle Hardee induced to execute the deed of June 13, 1980 by the undue influence of the defendants, or any of them?

Answer: Yes.

The jury also, upon the trial court's instructions, answered a damages issue favorably to plaintiff. Whereupon Judge Britt, presiding, entered judgment for the plaintiff setting aside the deeds dated, respectively, 13 June and 10 July 1980 and ordering that plaintiff have and recover the damages awarded by the jury.

## II.

[1] Defendants argue that their motion for directed verdict and judgment notwithstanding the verdict should have been allowed because the evidence was insufficient to support submission of the undue influence issue to the jury. A majority of the Court of Appeals concluded that the evidence was sufficient, and we agree.

We adhere to the well-settled principle that in determining the sufficiency of evidence relied on by plaintiff, it must be viewed in the light most favorable to plaintiff and plaintiff is entitled to every reasonable inference arising from the evidence. *See Cutts v. Casey*, 278 N.C. 390, 411, 180 S.E. 2d 297, 307 (1971). *Accord Daughtry v. Turnage*, 295 N.C. 543, 246 S.E. 2d 788 (1978); *Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973).

This Court has recognized the difficulty a party faces in proving undue influence in the execution of a document. *In re Andrews*, 299 N.C. 52, 54, 261 S.E. 2d 198, 199 (1980). Something must operate upon the mind of a person allegedly unduly influenced which has a controlling effect sufficient to destroy the person's free agency and to render the instrument not properly an expression of the person's wishes, but rather the expression of the wishes of another or others. "It is the substitution of the mind of the person exercising the influence for the mind of the [person executing the instrument], causing him to make [the instrument] which he otherwise would not have made." *In re Will of Turnage*, 208 N.C. 130, 131, 179 S.E. 332, 333 (1935). No test has emerged by which we can measure with mathematical certainty the sufficiency of the evidence to take the issue of undue influence to the jury. *See In re Beale's Will*, 202 N.C. 618, 163 S.E. 684 (1932). Several factors have been isolated which bear on the question. They include:

    1. Old age and physical and mental weakness of the person executing the instrument.

2. That the person signing the paper is in the home of the beneficiary and subject to his constant association and supervision.

3. That others have little or no opportunity to see him.

4. That the instrument is different and revokes a prior instrument.

5. That it is made in favor of one with whom there are no ties of blood.

6. That it disinherits the natural objects of his bounty.

7. That the beneficiary has procured its execution.

*In re Mueller's Will*, 170 N.C. 28, 30, 86 S.E. 719, 720 (1915). This list does not purport to contain all facts and circumstances which might suggest the existence of undue influence. Such a list would be limitless. Furthermore, the difficulty in detecting undue influence is ordinarily enhanced by the often adroit and cunning tactics employed by those attempting to exercise it. *Andrews*, 299 N.C. at 54, 261 S.E. 2d at 199. We remain guided, finally, by the maxim that "[u]ndue influence is generally proved by a number of facts, each one of which standing alone may be of little weight, but taken collectively may satisfy a rational mind of its existence." *In re Will of Everett*, 153 N.C. 83, 87, 68 S.E. 924, 925 (1910).

Evidence in this case favorable to the plaintiff tends to show the following:

Although plaintiff had been estranged from his deceased father for most of plaintiff's life, he had, after the death of his father's second wife in March 1980, begun to visit his father to try to establish a relationship with him. Plaintiff was the deceased's only heir. The deceased was taken suddenly ill in May 1980 and diagnosed as suffering from a malignant brain tumor which was surgically removed on 26 May after which he was hospitalized until 16 June. After surgery the deceased was physically weak, mentally confused, and lacked the capacity to know or understand the nature and consequences of his actions. His mental condition never improved after the surgery. One of plaintiff's witnesses, Silas Elmer Hardee, the deceased's brother, testified that when he visited the deceased in the hospital in June:

I would say something to him and he would say yes or no but you couldn't get anything out of him. He just wouldn't talk. . . . [H]e just didn't look right. . . . [H]e just got to where he just didn't really know what you were talking about; he didn't comprehend everything that was going on. . . . After he left the hospital and went to the nursing home . . . his mental condition continued to slowly go down; . . . but he got to where he couldn't even talk at all, he wouldn't even say a word.

The deceased on 9 June executed a power of attorney naming his employer and friend, David Stroud, as attorney in fact. Stroud advised defendant Odell Hardee "that I had a power of attorney from Lavelle. Odell Hardee knew that Lavelle had turned his affairs over to me, and so did Mrs. Parrish and Mr. Walton Hardee was aware of it also. . . ." The power of attorney "gave me authority to execute deeds for Lavelle Hardee as I understood it."

Knowing that the deceased had "turned his affairs over to" his friend and employer, Stroud, defendants Walton Hardee and Verna Parrish and Mrs. Parrish's husband, William, on 13 June secured the deed in question from an attorney's office in Lillington. They took the deed with them to Lavelle's hospital room where they secured his signature in the presence of a notary public. No one other than Lavelle, these defendants, Mr. Parrish, and the notary were present in the room at the time. These defendants and Mr. Parrish had "stayed in Lavelle's room about 30 to 45 minutes before the deed was mentioned." These defendants and Mr. Parrish secured the deed without the knowledge of Lavelle's then attorney in fact, David Stroud. Stroud did not learn of the execution of the deed until he was advised about it by plaintiff after Lavelle's death.

Although defendants presented evidence that Lavelle was alert and aware of what he was doing on the day the deed was executed and had the mental capacity to know and understand the nature and effect of his executing the deed, plaintiff's evidence was to the contrary. The jury resolved the mental capacity issue against plaintiff. Nevertheless, the jury could yet have found, consistently with its answer to the mental capacity issue, that when Lavelle executed the deed he was physically and mentally weak. The deed does disinherit the natural object of Lavelle's bounty,

his only son and heir, with whom, according to plaintiff's evidence, a good relationship was beginning to form. At least one of the immediate beneficiaries, Walton Hardee, and one of the ultimate beneficiaries of the transaction, Verna Hardee Parrish, procured, or helped to procure the deed's execution. The deed was executed without the knowledge of David Stroud, whom the procuring defendants knew was Lavelle's attorney in fact.

The jury could find, therefore, several of the badges of undue influence previously recognized by this Court. Taken together, all the facts and circumstances are sufficient to permit a rational trier of fact to find the deceased, Lavelle Hardee, to have been unduly influenced in the execution of the instrument in question.

## III.

[2] Defendants contend the Court of Appeals erred when it concluded that evidence of a certain conversation between plaintiff and deceased was admissible. We think this contention has merit.

Plaintiff testified that beginning in March 1980 he began to visit his father regularly. On the first of these visits, plaintiff said he and his father discussed the 49-acre tract of land here in question. Plaintiff was permitted to testify, over strenuous objection, that his father "stated that he would like to walk over the property lines with me so I would know where the points were." Thereafter, he and his father did walk the tract and "look at the lines and corners." Plaintiff then testified that his father's mental condition at this time was "perfectly normal."

The Dead Man's Statute provides that "a party or a person interested in the event . . . shall not be examined as a witness in his own behalf or interest . . . . against . . . a person deriving his title or interest from, through or under a deceased person . . . concerning a personal transaction or communication between the witness and the deceased person . . . ." N.C. Gen. Stat. § 8-51 (1981). Four factors trigger the provision's application:

(1) Plaintiff (the witness) was a party to and interested in the action;

(2) Plaintiff testified in his own behalf;

(3) Plaintiff testified against persons (appellants) who derived their title or interest from the deceased . . . and

(4) Plaintiff's testimony concerned a personal communication between himself and the deceased.

*See Peek v. Shook*, 233 N.C. 259, 261, 63 S.E. 2d 542, 543 (1951). The statute by its terms applies to the challenged testimony.

We have, however, recognized an exception to this rule of exclusion which permits an interested party to testify regarding his communications with the deceased to show the basis upon which the witness has formed an opinion as to the deceased's mental capacity. *Whitley v. Redden*, 276 N.C. 263, 272, 171 S.E. 2d 894, 901 (1970). Often, however, evidence as to mental capacity bears on the undue influence issue. *In re Will of Ricks*, 292 N.C. 28, 38, 231 S.E. 2d 856, 863 (1977). After examining earlier authorities the Court in *Ricks* concluded:

> Thus it seems an oversimplification of the rules to say that an interested witness may testify to transactions and communications with a deceased only if such testimony is considered on the mental capacity but not if it bears on the question of undue influence. The real distinction in the cases is whether the testimony is offered mostly to show the basis for the witness's opinion as to the deceased's mental condition or whether it is offered mostly to prove some other fact in issue. In the former instance the probative value of the testimony rests simply on the fact that the transactions or communications *occurred*. In the latter it rests on the truth of whatever assertions are contained in the transactions or communications related. In the former instance there is no hearsay involved and the testimony is generally admissible, while in the latter the hearsay nature of the testimony renders it inadmissible.

*Id.* at 38, 231 S.E. 2d at 863-64. In *Ricks* we delineated three criteria by which to resolve questions of admissibility of these kinds of communications:

> (1) If the probative value of such testimony rests mostly on demonstrating the basis for the witness's opinion as to the deceased's mental state, it is admissible under appropriate limiting instructions notwithstanding the provisions of [the Dead Man's Statute]. (2) If the probative value of such testimony rests mostly on demonstrating the basis for such an opinion, it is admissible under appropriate limiting instruc-

tions even when the mental state of the deceased is relevant to both the mental capacity and undue influence issues. (3) If the probative value of such testimony rests mostly on its tendency to prove certain facts in issue relevant to issues other than the deceased's mental state, [the Dead Man's Statute] and the hearsay rule render it inadmissible and limiting instructions will not cure the prejudice resulting from its admission.

*Id.* at 42, 231 S.E. 2d at 866.

Plaintiff suggests the evidence of his conversation with his father was offered mostly to show the basis for his opinion that his father's mental capacity was normal in March and April 1980 before the effects of the brain tumor became manifest; therefore the evidence is admissible under the first prong of the *Ricks* test. A majority of the Court of Appeals agreed with this contention, saying

[The] evidence bears *primarily*, if not wholly, on the accuracy of plaintiff's assessment of his father's mental capacity. It was proper for plaintiff to show that he knew when Lavelle Hardee was mentally competent (when Lavelle Hardee was able to point out his lines in March) and mentally incompetent (when Lavelle Hardee was in the hospital just prior to signing the questioned deed).

Dissenting from this conclusion, Chief Judge Vaughn said:

I believe that the testimony was offered to show Lavelle's dispositive intent. . . . The statement, however, is the *only* evidence in the record which tends to show that Lavelle had any intention of giving his property to Johnnie. Obviously, the statement's real significance was that it tended to show Lavelle's alleged dispositive intent, and thus was inadmissible hearsay and in violation of G.S. 8-51. I conclude, therefore, that, at the very least, this error would entitle defendants to a new trial.

We agree with Chief Judge Vaughn. There was no issue regarding the deceased's mental capacity in March and April 1980. No party contested the fact that deceased was then and had always been a perfectly normal individual mentally and physically

until the onset of symptoms in May 1980 caused by his brain tumor. The issue joined by the evidence in the case was whether deceased lacked mental capacity to execute a deed on or about 13 June 1980 following his brain surgery. Evidence of deceased's mental state at other, remote times is not relevant. The real effect of plaintiff's testimony regarding his conversations with his father in March-April 1980 was this: At a time when his father was concededly physically and mentally normal he intended for plaintiff to have the 49-acre tract which he later deeded to others. The testimony did not purport to show the basis for the witness's opinion of the deceased's mental state when the deed was executed. Therefore, neither the first nor second of the *Ricks* criteria are met. The probative value of this testimony rested mostly on its tendency to prove deceased's dispositive intent before his illness; therefore, the third *Ricks* criterion suffices to render it inadmissible.

The question of the existence of undue influence is, as usual, relatively close. Indeed, the Chief Judge of the Court of Appeals thought it was insufficient even to be submitted to the jury, a conclusion with which we have disagreed. Plaintiff's inadmissible testimony regarding his conversations with the deceased supported plaintiff's position on both dispositive issues submitted to the jury. As Chief Judge Vaughn noted, it "is the *only* evidence" of deceased's intention that plaintiff was to have the property. We cannot say that had this evidence not been admitted the jury's verdict would have been the same. Defendants, therefore, are entitled to a new trial.

For the reasons given the decision of the Court of Appeals is reversed in part and affirmed in part. The case is remanded to the Court of Appeals for further remand to Harnett Superior Court for a new trial.

Reversed in part; affirmed in part; remanded.