PEGGY JOYCE SMITH CAUDILL, INDIVIDUALLY, AND HAROLD J. SMITH, JR., AS
EXECUTOR OF THE ESTATE OF KITTY SMITH NOECKER, PLAINTIFFS V. GLADYS KINSEY
SMITH, INDIVIDUALLY, AND AS THE ADMINISTRATRIX OF THE ESTATE OF THOMAS K. SMITH,
DEFENDANTS

No. 934SC1293

(Filed 15 November 1994)

1. **Deeds § 120 (NCI4th)— undue influence—sufficiency of evidence**

    Evidence was sufficient to permit the jury reasonably to infer that defendant procured a deed by means of undue influence where it tended to show that plaintiff was old and physically and mentally weak; the deed was different from and effectively revoked a portion of plaintiff's will; and defendant procured the deed's execution.

    **Am Jur 2d, Deeds §§ 204-210.**

2. **Evidence and Witnesses § 924 (NCI4th)— statements by grantor—admissibility**

    In an action to have a deed declared void on the ground that it was obtained by undue influence, statements made by plaintiff, who was deceased at the time of trial, were not inadmissible hearsay, since evidence of declarations of the grantor which disclosed his state of mind at the time of the execution of the paper writing or the circumstances under which it was executed, tending to show that he did or did not act freely and voluntarily, is competent as substantive proof of undue influence, and all the challenged testimony here concerned plaintiff's state of mind regarding defendant and tended to show that plaintiff did not freely and voluntarily deed the remainder interest in the property to defendant.

    **Am Jur 2d, Evidence §§ 667, 696.**

    **Exception to hearsay rule, under Rule 803(3) of Federal Rules of Evidence, with respect to statement of declarant's mental, emotional, or physical condition. 75 ALR Fed 170.**

CAUDILL v. SMITH

[117 N.C. App. 64 (1994)]

**3. Evidence and Witnesses § 200 (NCI4th)— undue influence in executing deed—mental condition of grantor—evidence admissible**

In an action to set aside a deed based on undue influence, the trial court did not err in admitting the testimony of the grantor's attendant and physician regarding her mental condition, since there was no merit to defendant's contention that this testimony was irrelevant and too remote in time to be admissible.

**Am Jur 2d, Evidence § 556.**

**4. Wills § 67 (NCI4th)— undue influence—instructions proper**

The trial court's instruction to the jury on undue influence was proper and did not prejudice defendant, though it was not the same as that requested by defendant which was based on the North Carolina Pattern Jury Instruction on undue influence in the execution of wills.

**Am Jur 2d, Wills § 1090.**

Appeal by defendant from judgment filed 1 April 1993 by Judge Ernest B. Fullwood in Duplin County Superior Court. Heard in the Court of Appeals 14 September 1994.

*Burrows & Hall, by Fredric C. Hall, for plaintiffs-appellees.*

*White & Allen, P.A., by David J. Fillippeli, Jr. and John R. Hooten, for defendant-appellee.*

LEWIS, Judge.

Kitty Smith Noecker commenced this action to have declared void a deed in which she transferred real property to her brother, Thomas K. Smith. After the filing of the complaint, but before trial, both parties died and the substitutions named above were made. For purposes of this opinion, Kitty Smith Noecker will be referred to as "plaintiff," and Thomas K. Smith will be referred to as "defendant." The jury found that the deed was executed as a result of the undue influence of defendant, and judgment was entered for plaintiff. From the judgment, defendant appeals.

CAUDILL v. SMITH

[117 N.C. App. 64 (1994)]

I.

[1] Defendant's first contention on appeal is that the trial court erred in denying his motions for directed verdict and judgment notwithstanding the verdict, because there was insufficient evidence of undue influence to go to the jury.

To prove undue influence in the execution of a document, a party must show that something operated upon the mind of the person allegedly unduly influenced which had a

> controlling effect sufficient to destroy the person's free agency and to render the instrument not properly an expression of the person's wishes, but rather the expression of the wishes of another or others. "It is the substitution of the mind of the person exercising the influence for the mind of the [person executing the instrument], causing him to make [the instrument] which he otherwise would not have made."

*Hardee v. Hardee*, 309 N.C. 753, 756, 309 S.E.2d 243, 245 (1983) (quoting *In re Will of Turnage*, 208 N.C. 130, 131, 179 S.E. 332, 333 (1935)). While there is no test by which the sufficiency of the evidence of undue influence can be measured with mathematical certainty, several factors have been identified as bearing on the question, including:

> 1. Old age and physical and mental weakness of the person executing the instrument.
>
> 2. That the person signing the paper is in the home of the beneficiary and subject to his constant association and supervision.
>
> 3. That others have little or no opportunity to see him.
>
> 4. That the instrument is different and revokes a prior instrument.
>
> 5. That it is made in favor of one with whom there are no ties of blood.
>
> 6. That it disinherits the natural objects of his bounty.
>
> 7. That the beneficiary has procured its execution.

*Id.* at 756-57, 309 S.E.2d at 245. Finally, we note that " '[u]ndue influence is generally proved by a number of facts, each one of which standing alone may be of little weight, but taken collectively may satisfy a rational mind of its existence.' " *Id.* at 757, 309 S.E.2d at 246 (quoting *In re Will of Everett*, 153 N.C. 83, 87, 68 S.E. 924, 925 (1910)).

CAUDILL v. SMITH

[117 N.C. App. 64 (1994)]

In the present case, the evidence supporting plaintiff's claim tended to show that on 5 November 1990 plaintiff, then aged 90, conveyed to defendant by gift deed a remainder interest in three tracts of real property located in Duplin County, reserving a life estate for herself. In the absence of the deed, the property would have been disposed of pursuant to plaintiff's will, which was executed on 11 June 1986. Under the will, the property would have gone to defendant for life, with the remainder in fee to Peggy Caudill, plaintiff's niece.

At the time the gift deed was executed, plaintiff had suffered three strokes and was confined to a wheelchair. Her eyesight was poor, and she needed help from her live-in attendant, Magdalene Smith (hereinafter "Smith"), in order to read her mail and other papers. In 1987, plaintiff had begun having episodes of hallucinations and confusion. In September and October 1990, plaintiff was confused and at times did not recognize family members. During October 1990, defendant visited with plaintiff at her house about two or three times a week.

On 30 October, Smith drove plaintiff to Attorney William Allen's office at the direction of defendant. There, plaintiff executed a power of attorney, naming defendant as her sole attorney-in-fact. Smith testified that at Allen's office, defendant told her that anybody could talk plaintiff into anything and he was tired of it and wanted it changed. Smith also testified that defendant had been upset with a previous power of attorney which had named him and another individual as attorneys-in-fact. Christine Williams, a friend of plaintiff, testified that on 5 October, she and plaintiff discussed defendant's authority as attorney-in-fact, and that plaintiff expressed her displeasure with the arrangement. Plaintiff told her that defendant was making her sign five blank checks at a time and that "some of them were coming through her bank statement that she didn't know anything about." Plaintiff told Williams that she did not want anyone "messing with [her] checks," that defendant could not "keep his fingers out of [her] business," and that defendant was "worrying a four letter word out of [her]."

Regarding plaintiff's will, Smith testified that she overheard a conversation between plaintiff and defendant in October of 1990. Defendant told plaintiff that "he knew about her will and he didn't like it the way it was, . . . and he didn't have nothing to even show he was going to get anything." He stated, "I want something—I want you to sign something showing I do have that." On 4 November, defendant

CAUDILL v. SMITH

[117 N.C. App. 64 (1994)]

told Smith to drive plaintiff to Attorney Allen's office the next day to sign some papers, and on 5 November plaintiff executed the deed in question at Allen's office. Sometime after 5 November, plaintiff received the deed in the mail from Allen. After Smith had read the deed to plaintiff about three times, plaintiff responded, "Do you mean to tell me that's all that's in there and Peggy is not in there at all?" Plaintiff then instructed Smith to telephone Allen for her. On the phone, plaintiff told Allen that she wanted the deed to be just like her will with respect to the property. That is, defendant would have a life estate, and plaintiff's niece, Peggy, would have the remainder interest.

From the foregoing evidence, the jury could have found several of the badges of undue influence. The evidence showed that plaintiff was old and physically and mentally weak; the deed was different from and effectively revoked a portion of plaintiff's will; and defendant procured the deed's execution. We conclude that, taken together, the facts and circumstances were sufficient to permit the jury reasonably to infer that defendant procured the 5 November 1990 deed by means of undue influence.

## II.

[2] Defendant's next contention is that the trial court erred in allowing plaintiff's witnesses to testify to statements made by plaintiff, who was deceased at the time of trial, because the statements were inadmissible hearsay. First, defendant argues that certain testimony by Janie Turner, a friend of plaintiff, should have been excluded. Specifically, Turner testified that plaintiff told her that she did not like the power of attorney that she had granted and that she did not want anyone writing checks on her account.

The testimony of Christine Williams, another friend of plaintiff, included statements of plaintiff similar to those testified to by Turner. In addition, Williams testified that plaintiff told her that she thought the power of attorney she had signed was just another one of the deeds she had been signing, as plaintiff had recently been selling some of the land she owned.

Magdalene Smith, plaintiff's attendant, testified that plaintiff told her that she wanted to leave her property to her brother for life, and then to her niece, Peggy. Plaintiff told Smith not to tell defendant about the terms of plaintiff's will, because if he found out, he would not leave plaintiff alone until he got everything she had. Smith also testified to a conversation between plaintiff and defendant where

CAUDILL v. SMITH

[117 N.C. App. 64 (1994)]

plaintiff told defendant she was not going to leave her property to him and that she was not responsible for educating his children. Finally, Smith testified that, upon hearing her read the deed to plaintiff, plaintiff stated that the terms of the deed were not what she intended and that she wanted the property to go to her niece, Peggy.

We believe that the rule announced in *In re Will of Ball*, 225 N.C. 91, 33 S.E.2d 619 (1945), is applicable to the case at hand. There the Court held: "Evidence of declarations of the testator which disclose his state of mind at the time of the execution of the paper writing or the circumstances under which it was executed, tending to show he did or did not act freely and voluntarily, is competent as substantive proof of undue influence." *Id.* at 94, 33 S.E.2d at 622. In the present case, all of the challenged testimony concerned plaintiff's state of mind regarding defendant and tended to show that plaintiff did not freely and voluntarily deed the remainder interest in the property to defendant. Accordingly, the statements testified to were admissible as tending to prove undue influence. We note that the Dead Man's Statute, N.C.G.S. § 8C-1, Rule 601(c) (1992), is not at issue here, because the challenged testimony did not come from interested witnesses.

III.

[3] Defendant next argues that the trial court erred in admitting the testimony of Magdalene Smith and W.T. Parrott, plaintiff's physician, regarding plaintiff's mental condition. Dr. Parrott testified that in 1989 and 1990, plaintiff had periods of hallucinations and confusion. Smith testified about plaintiff's September 1990 confusion and disorientation.

Defendant first contends that this testimony was irrelevant, as summary judgment had been granted for defendant on the issue of plaintiff's mental capacity. We disagree. The mental condition of the person executing the document is perhaps the strongest factor in resolving the question of undue influence. *In re Will of Ricks*, 292 N.C. 28, 37, 231 S.E.2d 856, 863 (1977). Moreover, a finding against the plaintiff on the issue of mental capacity does not necessarily preclude a finding of mental weakness on the issue of undue influence. *See Hardee*, 309 N.C. at 758, 309 S.E.2d at 246. Accordingly, defendant's contention that the mental condition of plaintiff was irrelevant is without merit.

Defendant also argues that the evidence of mental weakness was irrelevant because the testimony did not specifically center on plain-

tiff's condition on the date the deed was executed. Further, even if the testimony was relevant, defendant contends, its relevance was substantially outweighed by the danger of confusion of the issues or misleading the jury, and the testimony should have been excluded under N.C.G.S. § 8C-1, Rule 403 (1992). We note that whether to exclude relevant evidence under Rule 403 is a matter left to the discretion of the trial court. *Matthews v. James*, 88 N.C. App. 32, 39, 362 S.E.2d 594, 599 (1987), *disc. review denied*, 322 N.C. 112, 367 S.E.2d 913 (1988).

Evidence of a decedent's mental capacity at other times is admissible if it bears on the issue of the decedent's mental capacity at the time he executed the document. *Id.* at 40, 362 S.E.2d at 599-600. Evidence of his mental condition before the critical time is admissible, if it is not too remote to justify an inference that the same condition existed at the latter time. *Id.* at 40, 362 S.E.2d at 600. Whether the evidence is too remote depends on the circumstances of the case interpreted by "the rule of reason and common sense." *Id.* (quoting *In re Will of Hargrove*, 206 N.C. 307, 312, 173 S.E. 577, 579-580 (1934)).

In the case at hand, the deed was executed on 5 November 1990. Smith testified to plaintiff's mental condition as of September 1990, and Dr. Parrott testified to the period around 1989-1990. This testimony was not too remote to justify an inference that the same condition existed on 5 November 1990, nor was it so remote as to confuse or mislead the jury.

IV.

[4] Defendant's final argument on appeal is that the trial court erred in its instruction to the jury on undue influence. Defendant submitted an instruction similar to North Carolina Pattern Jury Instruction 860.20, "WILLS—UNDUE INFLUENCE," in that, among the factors listed for the jury's consideration were: (1) whether the instrument is made in favor of one with whom there are no ties of blood, or not; and (2) whether it disinherits the natural objects of the drafter's bounty, or not. The trial court's instruction was, instead, based on N.C.P.I. 505.30, entitled "RESCISSION OF WRITTEN INSTRUMENT—UNDUE INFLUENCE," which is similar to 860.20, but does not include the two factors listed above. We note that there is no pattern instruction specifically relating to the setting aside of a deed based on undue influence.

This Court has recognized that the preferred method of jury instruction is the use of the approved guidelines of the North Carolina Pattern Jury Instructions. *In re Will of Leonard*, 71 N.C. App. 714,

717, 323 S.E.2d 377, 379 (1984). Although the pattern instruction given by the trial court was not the same as that requested by defendant, it did include among the list of factors to be considered: "any other factors which you find from the evidence may be relevant." We conclude that, while the trial court could have properly given N.C.P.I. 860.20, see *Hardee*, 309 N.C. at 756-757, 309 S.E.2d at 245, the instruction that was given was proper and did not prejudice defendant.

For the reasons stated, we conclude that the trial court committed no error.

No error.

Judges JOHNSON and GREENE concur.