LINEBARGER v. LINEBARGER.

(Filed December 4, 1906).

*Wills—Transaction with Deceased—Evidence—Declarations of Testator—Undue Influence—Declarations of Devisee—Joint Interest—Submission of Special Issue—Evidence—Sufficiency—Mental Capacity.*

1. On an issue of *devisavit vel non,* it was not competent to prove by a witness whose husband was one of the caveators and heirs at law of the testator, declarations of said testator offered for the purpose of showing undue influence, as such witness had an interest in the real estate, dependent upon the result of the action which disqualified her under Rev., sec. 1631 (Code, 590).

2. Upon an issue of *devisavit vel non,* declarations of the testator regarding the execution of his will indicating the state of his mind, etc., made contemporaneous with or so near thereto as to fall within the principle of *res gestæ,* are competent.

3. Upon an issue of *devisavit vel non* declarations of the testator regarding the execution of the will, tending to show undue influence, made prior to the execution of the will, are competent.

4. Upon an issue of *devisavit vel non,* the declarations of a legatee regarding his own conduct, for his own benefit, cannot be used against other legatees, as they have not a joint interest.

5. In a proceeding for the probate of a will, where there is sufficient evidence as to undue influence by only one of the devisees, a special issue may be submitted directed to the validity of the interest of such devisee.

6. Where a special issue is submitted directed to the undue influence exerted over the testator by one of the devisees, the declarations of the testator made prior to the execution of the will, coupled with those made by such devisee, are competent to be considered by the jury upon the issue thus presented.

7. Upon an issue of *devisavit vel non,* declarations of the testator made prior to the execution of the will, are not sufficient to be submitted to the jury to show undue influence, in the absence of evidence showing any acts of undue influence or any admissions thereof.

8. In passing upon the question as to whether the will was procured by undue influence, the age of the testator, his mental and physical condition, and other relevant facts may be considered by the jury.

PROCEEDINGS by Caroline Linebarger and others against H. D. Linebarger and others, heard by *Judge Henry R. Bryan* and a jury, at the July Term, 1906, of the Superior Court of CATAWBA.

Propounders, appearing in the record as plaintiffs, offered for probate a paper-writing purporting to be the last will and testament of Fred. H. Linebarger, deceased. Caveators, appearing as defendants, filed a caveat averring that said paper-writing was not the last will and testament of said Fred. H. Linebarger, for that "It was obtained by the undue influence of Caroline Linebarger, Hosea Linebarger, Marvin Linebarger, and other persons in their behalf." Thereupon an issue was submitted, to-wit: "Is the paper-writing offered for probate, and every part thereof, the last will and testament of Fred. H. Linebarger, deceased?" The jury having responded "No" to the issue, judgment was rendered accordingly, and propounders having noted exceptions to his Honor's rulings set forth in the opinion, appealed.

*Witherspoon & Witherspoon* for the plaintiffs.
*W. C. Feimster, M. H. Yount,* and *Self & Whitener* for the defendants.

CONNOR, J., after stating the case: Propounders proved the execution of the alleged will by the subscribing witnesses thereto and that at the time thereof the alleged testator was of sound mind, etc., and read the same. By the provisions of said paper-writing the alleged testator gave his entire estate, both real and personal, except several pecuniary legacies, to his wife, Caroline Linebarger, for life, remainder to two of his sons, being the youngest, Hosea and Marvin Linebarger. He gave to six of his children twenty dollars each, to one child fifteen dollars, to two sons forty dollars each, and to the children of two deceased daughters one dollar each. He named his wife and another person executors. The paper-

writing was executed 27 November, 1903, and he died 15 March, 1905. It was offered for probate April, 1905.

For the purpose of showing undue influence, caveators offered to show the declarations made by the alleged testator before and subsequent to the execution of the paper-writing, also declarations of one of the devisees. To the admission of this class of testimony propounders excepted.

It appeared that the alleged testator was, at the date of the paper-writing, eighty-one years of age, and that Caroline Linebarger was his second wife. There was nothing in the testimony of the subscribing witnesses indicating mental incapacity, nor was there any evidence from this source showing undue influence or fraud.

Among other witnesses introduced to show declarations of the alleged testator was Mrs. Susan Linebarger, wife of one of the caveators. Propounders objected to her competency to testify to declarations of the alleged testator, because of sec. 1631, Rev. (Code, 590). It is clear that if the caveators succeeded in their contention, the husband of the witness, as one of the heirs at law, became the owner of an undivided interest in the real estate. It is well settled by a number of decisions that the wife immediately upon the seizin, either in law or deed of the husband, becomes entitled to "an inchoate right of dower or estate in the land" of her husband. *Gatewood v. Tomlinson,* 113 N. C., 312; *Gore v. Townsend,* 105 N. C., 228 (8 L. R. A., 443); *Trust Co. v. Benbow,* 135 N. C., 303. She therefore had an interest in the property dependent upon the result of the controversy and, under the ruling in *Pepper v. Broughton,* 80 N. C., 251, was incompetent. The exception to the admission of her testimony must be sustained. This ruling would result in a new trial; as, however, other exceptions are made in the record, and will probably arise in another trial, it is our duty to dispose of them at this time.

The declarations of the testator fall within three classes and their admissibility depend upon different principles and exceptions.  Caveators proposed to show declarations which it is claimed tend to show undue influence made prior to the execution of the paper-writing.

Mrs. Kale testified that prior to the death of her first husband, which was two years before the death of Mr. Linebarger, he said in her presence that he wanted the law to make his will, each child to have his part; that he did not intend to make a will unless "they all" persuaded him to do so.

Mr. Gant testified that during the month of April, 1900, while at Mr. Linebarger's house, he said that "he didn't see much pleasure; that they terrified him day and night; he saw no peace." Witness asked him, Who?   He said, "Ma and Hosea, to make a will to Hosea and Ma." That he had heard Mr. Linebarger say repeatedly that he wanted his property divided equally among his children.   That in 1901 he had another conversation with Mr. Linebarger in which he complained of the conduct of Hosea and his wife, to whom he referred as "Ma."

One Helderman testified that, at some date not fixed, but which by reference to certain matters of public history we may fix at some time during the year 1903, Mr. Linebarger said to him that "Hosea and his last children wanted him to make a will, but he said he wanted all his children to fare alike when he was dead and gone."

One Monroe Gordon testified that some time during the year 1903 Mr. Linebarger said to him that his wife wanted him to make a will to her and her two boys, but that he was not going to do that; that he could not eat, sleep, and work; that he could not live many years.

The only evidence of declarations made subsequent to the execution of the paper-writing were those testified to by Mrs.

Susan Linebarger. We find no testimony showing any *acts* on the part of propounders or any other person of undue influence or fraud.

That the declarations of the testator regarding the execution of his will indicating the state of his mind, etc., made contemporaneous with or so near thereto as to fall within the principle of *res gestœ* are competent in an issue of *devisavit vel non,* is well settled. 1 Redf. on Wills, 542. In *Shailer v. Bumstead,* 99 Mass., 112, *Colt, J.,* says: "It is always liable to be impeached by any competent evidence that it was never executed with the required formality, was not the act of one possessed of testamentary capacity, or was obtained by such fraud or undue influence as to subvert the real intentions and will of the maker. The declarations of the testator accompanying the act must always be resorted to as the most satisfactory evidence to sustain or defend the will whenever this issue is presented."

In so far as the declarations tend to show undue influence, we think that they are competent. While the authorities respecting the extent to and purpose for which such declarations may be admitted are not uniform, we think that, at least in this State, those offered here were competent. 1 Green. (16 Ed.), 760.

Eliminating the testimony of Mrs. Susan Linebarger, we find no evidence of declarations made subsequent to the execution of the paper-writing. This relieves us from the discussion of the much-vexed question as to the extent to and purpose for which such declarations are admissible in this State under the rulings in *Reel v. Reel,* 8 N. C., 248, and *Howell v. Barden,* 14 N. C., 442. Interesting discussions of these cases as related to the current of authority upon this question will be found in *Shailer v. Bumstead, supra; Waterman v. Whitney,* 11 N. Y., 157; *In re Hess's Will,* 48 Minn., 504 (*s. c.,* 31 Am. St. Rep., 665, and notes); *Meeker v.*

*Boylan,* 28 N. J. L., 274 (289) ; *Jackson v. Kniffen,* 2 Johns, 31 (3 Am. Dec., 393, and notes).

Caveators proposed to show declarations of Hosea Linebarger made prior and subsequent to the execution of the paper-writing, tending to show undue influence by him. There was no declaration regarding any act done by said Hosea. The exception to this testimony presents a difficult question. It is elementary learning that a party's declarations against his own interest, or those claiming under him, are always competent, this being one of the settled exceptions to the hearsay rule. It is equally well settled that, when the person whose declarations are sought to be shown, is alive, they are not competent against strangers, or those claiming a common but not joint interest. That persons taking a devise, or bequest, in a will have a community of interest, but not a joint interest, is well settled. "Upon the question whether a declaration of a legatee made after the execution of a will is admissible to show that it was procured by undue influence, there is a conflict of authority. The majority of the cases reject such evidence, reasoning, on general principles, that no one should be concluded by unauthorized statements of others with whom he is in no way associated or identified in interest. The admission of a legatee is evidence against the will where he is the sole beneficiary under it. But the interests of legatees under a will are several, not joint. Each claims independently of the others, and his interest should not be affected by the acts or declarations of the other legatees." 1 Underhill on Wills, 163. The question is presented and discussed in *Shailer v. Bumstead, supra.* "The admissions of a party to the record against his interests are, as a general rule, competent against him; and this rule applies to all cases where there is an interest in the suit, although other joint parties in interest may be injuriously affected. But it does not apply to cases where there are other

parties to be affected, who have not a joint interest, or do not stand in some relation of privity to the party whose admission is relied upon. A mere community of interest is not sufficient. Devisees and legatees have not that joint interest in the will which will make the admission of one admissible against the other legatees. * * * The separate admissions of each made after the act, that the will was procured by their joint acts of fraud or undue influence, cannot be permitted to prejudice the other. Such statements are only admissible when they are made during the prosecution of the joint enterprise. Admitting, for the present, that any interest in a will obtained by undue influence cannot be held by third persons, however innocent of the fraud, and that the gift must be taken tainted with the fraud of the person procuring it, still it by no means follows that the interest of the other innocent legatees should be liable to be divested by the subsequent statements of the parties procuring the will. Such a rule would violate all sense of right, and is not sustained by the decisions. The admissions of a legatee made prior to the date of the execution are rejected for the reason that, if made before he becomes a legatee, they are not declarations against his interest." 1 Underhill on Wills, 163.

Of course, if there be a conspiracy, or the undue influence be either the result of a common design or be committed jointly or in concert, the acts and declarations of the parties engaging therein would be admissible in the same way and to the same extent as in other like cases.

In *Gash v. Johnson,* 28 N. C., 289, the question came up in a rather peculiar way, and while in the opinion the Court expressly says that the declaration of one of the legatees in regard to undue influence is not competent against the others, it is decided that, because he was not a party to the record, the will being propounded by the executor alone, such evidence is immaterial to affect his rights as devisee. In that case the

contest was between the executor, who alone propounded the will in common form, and the caveators.

It would seem from the decision in *McRainy v. Clark,* 4 N. C., 698, that the declarations of one of the legatees or devisees are competent as against himself. The usual and statutory method of proceeding in this State, when a caveat is filed, is to summon all persons in interest to make themselves parties. Rev., 3136. It is suggested by *Judge Daniel* in *Gash v. Johnson, supra,* that the Court should direct that a special issue be drawn "for the jury to find" whether the paper-writing propounded, or any part thereof, and if any, which part, is the last will and testament of the testator. It may be that, under an issue so drawn, the declarations of one or more of the legatees could be received as against the interest of such legatee when such declarations affected the validity of the legacy or devise made to such declarant. That there are practical difficulties in the application of this rule is apparent. We are impressed with the views of *Mr. Justice Craig,* expressed in *McMillan v. McDill,* 110 Ill., 47: "In the case under consideration, the Court, in deciding the question, admitted the declarations only as against the party who made them; but this did not relieve the evidence of its injurious effect. The evidence was admitted upon the issue involved in the case. It was incompetent as against the other defendants, and as it could not affect the issue without affecting the other defendants, it was, in our judgment, incompetent to go to the jury on the issue involved. If the interest of the devisees had been joint, the evidence might have been admitted against all of them, as we understand it to be a rule of evidence where the parties have a joint interest in the matter in suit, an admission made by one is in general competent evidence against all. But here the devisees did not have a joint interest under the will, but they had separate interests in one subject—the validity of the will, as held in *Dietrich v. Dietrich, supra.* If this was a case where a judgment could

be rendered against one of the defendants without affecting the rights of the others, there might be some ground for admitting in evidence the declarations as against the defendant who made them; but such is not the case. The only question here is as to the validity of the will, and testimony which defeats one defendant—one devisee—defeats all, and a judgment against one necessarily defeats all. While it might be proper to defeat a will on the admissions of a party who was a sole devisee, it would be manifestly unjust, where there are several devisees, to suffer the rights of all to be concluded and swept away by the admissions of one, and these admissions made in their absence and without their knowledge or sanction. If the admissions here could have gone to the jury and affected the rights of none but the one making them, no error would have been committed; but such was not the case. The admissions, notwithstanding the ruling of the Court, went to the issue *devisavit vel non,* in which all the devisees were equally interested."

It is true that the declaration offered in that case was that the testator was mentally incompetent. It may be that a distinction exists between declarations of this character, which go to the validity of the entire will, and those amounting to admissions that the declarant who has a legacy or devise, under the will, admitted that he had exerted undue influence or practised a fraud upon the testator. There is not a scintilla of evidence in this record that Marvin ever spoke to his father, to his mother, or to Hosea, in regard to the will. He denies that he did so, and no one contradicts him. He expressly says that Marvin had not done so. There is no evidence, other than Mr. Linebarger's declarations before the will was made, that Mrs. Caroline Linebarger had talked with her husband in regard to his will. It would therefore be manifestly unjust that Hosea's declarations regarding his own conduct, for his own benefit, should be used against them.

Excluding the declarations of Hosea and of Mrs. Susan Linebarger, we are of the opinion that, measured by the standard applied by this Court in *Lee v. Williams,* 111 N. C., 200, there is not sufficient evidence to be submitted to the jury to show undue influence as against Mrs. Linebarger and Marvin. The declarations are not inconsistent with the final determination of Mr. Linebarger to make the will as we find it. He said that it was hard to make a will; that he wanted the law to make his will. That he would not make a will unless they persuaded him. That they terrified him day and night; that he saw no peace. This was in April, 1900; whereas, he did not make a will until November, 1903. That he wanted his property divided equally between his children; that his first wife's children were as near to him as his second and it was a hard thing to have to do. Monroe Goodson says that he said: "I want my land to go to my first chaps." That they, meaning Hosea, would curse him. That was Hosea. He didn't say the old lady cursed him or that Marvin did so. His land was worth about $2,000, and he had, it appears, about $1,200 in money.

His Honor instructed the jury that if they found that the paper-writing was executed as testified to by the witnesses to it, they would answer the issue "Yes," unless they found from the evidence by the caveators, first, that undue influence was in fact exerted; second, that it was successful in subverting and controlling the will of the testator. In regard to the declarations, he said that they afforded no substantive proof of undue influence and were not admitted for that purpose, and before the caveators could recover it was necessary that they should prove that undue influence was in fact actually exerted upon the testator by other evidence than his own declarations. This instruction was correct and is sustained by the authorities and the reason of the thing. *In re Hess's Will, supra.*

It would be an exceedingly dangerous innovation upon the statute which requires a will to be executed according to the formalities prescribed, to permit it to be set aside upon mere declarations of the testator in regard to undue influence, unaccompanied by any act on the part of any person. Measured by the standard laid down by his Honor, we think that he should have instructed the jury that there was no evidence upon which they could find against the will as to Mrs. Linebarger and Marvin. We can see no reason why a special issue may not be submitted to the jury, as suggested in *Gash v. Johnson, supra,* directed to the interest of Hosea. In that event, as we have seen, the declarations of the testator made prior to the execution of the will, coupled with those of Hosea, would be competent to be considered by the jury on the issue thus presented.

The propounders excepted to certain parts of his Honor's charge in regard to insanity. While we find no suggestion of insanity, either in the caveat or the evidence, in passing upon the question as to whether the will was procured by the undue influence of Hosea, the age of the testator, his mental and physical condition and other relevant facts would be competent to be considered by the jury.

The propounders attempted to raise the question that there was no evidence to be submitted to the jury by a motion for judgment of *non obstante veredicto.* This was not the proper motion. His Honor could not have rendered judgment notwithstanding the verdict. It is evident, however, that it was their purpose to move for judgment upon the whole evidence.

We are of the opinion that as to Caroline and Marvin Linebarger, eliminating the incompetent testimony, the motion should have been allowed. The cause should be remanded for a new trial, in accordance with the principles announced herein.

New Trial.

HOKE, J., concurs in result.