HARVEY C. TAYLOR, JR., Plaintiff v. DON A. ABERNETHY, Individually and JACK C. WEIR, Administrator CTA of the Estate of Romer Gray Taylor, Defendants

No. COA04-651

(Filed 18 October 2005)

### 1. Evidence— dead man's statute—direct interest in property—inchoate dower rights

The wife of the plaintiff disputing an estate had a direct legal interest in the property through inchoate dower rights and was disqualified by the dead man's statute, N.C.G.S. § 8C-1, Rule 601, from testifying about oral communications between herself and the decedent or overheard conversations between her husband and decedent.

### 2. Evidence— hearsay—decedent's letters and envelopes— handwriting sample—corroboration of intent to make will

In an action on a contract to make a will, letters and envelopes from the decedent were admissible to corroborate the decedent's intent, as a handwriting sample, and to rebut defendant's assertion that the decedent would never have signed anything like the contract.

### 3. Evidence— handwriting expert—opinion admissible

A handwriting expert was properly allowed to give his opinion about the genuineness of decedent's signature on a contract to make a will.

**4. Evidence— dead man's statute—party to action—interest in outcome**

The trial court properly prohibited defendant from testifying about conversations he had with the decedent in an action involving a contract to make a will. Testimony is prohibited from witnesses who are parties to the action or who have a direct pecuniary interest in the event. N.C.G.S. § 8C-1, Rule 601.

**5. Appeal and Error— law of the case—prior appeal—issues not necessary or decided**

Defendant's failure to cross-appeal issues in a first appeal did not preclude him from raising them in the second appeal because they were not actually decided on the first appeal, nor were they necessary for that decision.

**6. Jurisdiction— choice of law—procedural issues—North Carolina law**

Although a choice of law provision in a contract to make a will specified Pennsylvania law, North Carolina law governs all matters procedural when a lawsuit is filed in North Carolina regarding the validity of a contract made in another state. The trial court did not err by instructing the jury that the burden of proof was by the greater weight of the evidence.

**7. Contracts— to make a will—elements—execution**

The trial court erred by refusing defendant's request for an instruction on whether plaintiff had established the elements of a contract in an action on a contract to make a will. When the opposing party presents evidence rebutting the presumption of due execution arising from recordation and notarization, there is a permissive inference for the jury to determine. The trial court invaded the province of the jury and acted as the fact finder when it concluded that the document was a valid contract to make a will.

Appeal by defendant Abernethy from judgment entered 5 January 2004 by Judge James W. Morgan in Burke County Superior Court. Heard in the Court of Appeals 26 January 2005.

*Wyatt, Early, Harris, Wheeler, LLP, by William E. Wheeler, for plaintiff-appellee.*

*Gorham, Crone, Mace & Green, LLP, by John W. Crone, III, Sigmon, Sigmon & Isenhower, by C. Randall Isenhower, and Kilpatrick Stockton, LLP, by James H. Kelly for defendant-appellant Abernethy.*

STEELMAN, Judge.

Defendant, Don A. Abernethy, appeals the trial court's entry of judgment following a jury verdict, holding that Romer Gray Taylor (Romer) entered into a valid contract to convey his entire estate to his brother, plaintiff, Harvey C. Taylor, Jr. For the reasons discussed herein, we reverse and remand this matter for a new trial.

Romer was a lifelong resident of Burke County, North Carolina. Plaintiff was Romer's older brother. Defendant was Romer and plaintiff's nephew. Romer never married and had no children. Plaintiff moved to Pennsylvania after World War II and has continued to reside there. In 1978, plaintiff assisted Romer in the acquisition of a backhoe. On 7 October 1997, Romer executed a holographic will, which left his entire estate to defendant. On 22 October 1997, plaintiff filed a document with the Burke County Register of Deeds, which purported to be a contract to make a will between himself and Romer and was dated 10 July 1978. This contract stated that Romer would "immediately make a valid will devising to HARVEY C. TAYLOR and his heirs, assigns, and successors the entire estate of said ROMER GREY TAYLOR." The contract further provided that Romer agreed not to revoke the will made pursuant to its provisions. The contract was executed in the Commonwealth of Pennsylvania. Romer died on 18 January 1998. Following his death, defendant offered the holographic will for probate. Plaintiff instituted this action on 12 February 1998 seeking specific performance of the contract to make a will.

This matter initially came on for trial at the 29 August 2000 session of court. The jury found the signature of Romer on the contract to make a will was not genuine. Based upon this finding, the trial court dismissed plaintiff's action. Plaintiff appealed. On 19 March 2002, this Court filed an opinion finding error in part and remanded the case for a new trial. *Taylor v. Abernethy*, 149 N.C. App. 263, 560 S.E.2d 233 (2002), *disc. review denied*, 356 N.C. 695, 579 S.E.2d 102 (2003). We held the trial court erred in excluding plaintiff's proffered expert testimony concerning the genuineness of Romer's signature on

the contract to make a will. *Id.* at 274-75, 560 S.E.2d at 240. We further held the trial court did not err in denying defendant's motion to dismiss based on Pennsylvania's six year statute of limitations. *Id.* at 275, 560 S.E.2d at 240-41.

This matter was retried before Judge James W. Morgan at the 1 December 2003 session of superior court. The trial judge submitted a single issue to the jury: "Is the signature on the document labeled Plaintiff's Exhibit A and entitled 'Contract to Make a Will' the genuine signature of Romer Gray Taylor?"

The trial court entered judgment in favor of plaintiff following the jury's determination that it was indeed Romer's signature on the contract. The trial court directed the administrator CTA to deliver the entire estate to plaintiff. From entry of this judgment, defendant appeals.

[1] We first address defendant's second argument in which he contends the trial court erred in permitting plaintiff's wife to testify concerning her conversations with the decedent, as well as permitting her to testify to conversations between plaintiff and Romer, which she overheard, as this violated Rule 601 of the North Carolina Rules of Evidence. We agree.

Rule 601, also known as the "dead man's statute," provides:

(c) *Disqualification of interested persons.*—Upon the trial of an action, or the hearing upon the merits of a special proceeding, a party or a person interested in the event, or a person from, through or under whom such a party or interested person derives his interest or title by assignment or otherwise, shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest, against the executor, administrator or survivor of a deceased person, or the committee of a lunatic, or a person deriving his title or interest from, through or under a deceased person or lunatic, by assignment or otherwise, concerning any oral communication between the witness and the deceased person or lunatic.

N.C. Gen. Stat. § 8C-1, Rule 601(c) (2005). To be disqualified as a witness interested in the event of the action, the witness must have a " 'direct legal or pecuniary interest in the outcome of the litigation.' " *Etheridge v. Etheridge*, 41 N.C. App. 39, 42, 255 S.E.2d 735, 738 (1979) (quoting *Burton v. Styers*, 210 N.C. 230, 231, 186 S.E. 248, 249 (1936)). " 'The key word in this phrase is 'legal,' ' " since a pecuniary interest

alone is insufficient to disqualify a witness under Rule 601. *Rape v. Lyerly*, 287 N.C. 601, 622, 215 S.E.2d 737, 750 (1975) (citations omitted). The reason for this rule is that "[individuals] quite often understand and interpret personal transactions and communications differently, at best; and the Legislature, in its wisdom, has declared that an *ex parte* statement of such matters shall not be received in evidence." *Sherrill v. Wilhelm*, 182 N.C. 673, 675, 110 S.E. 95, 96 (1921).

We hold that plaintiff's wife was an interested party for purposes of Rule 601. N.C. Gen. Stat. § 29-30 provides:

> [T]he surviving spouse of an intestate or the surviving spouse who has petitioned for an elective share shall be entitled to take as his or her intestate share or elective share a life estate in one third in value of all the real estate of which the deceased spouse was seised and possessed of an estate of inheritance at any time during coverture . . . .

N.C. Gen. Stat. § 29-30(a) (2005).

> This section preserves to a surviving spouse the benefits that were formerly available as dower and curtesy. A surviving spouse is given this election so as not to be rendered penniless and would elect this option when the estate is small or insolvent. The statute limits the right of a married person to convey his or her real property free from the elective life estate provided by this section.

*Taylor v. Bailey*, 49 N.C. App. 216, 219, 271 S.E.2d 296, 298 (1980) (internal citations omitted). While both spouses are alive, the dower interests are referred to as being inchoate, since the right depends on the spouse owning the real estate dying first. *City of Winston-Salem v. Yarbrough*, 117 N.C. App. 340, 345, 451 S.E.2d 358, 362 (1994). " 'An inchoate dower interest is not an estate in land nor a vested interest, but nevertheless, it acts as an encumbrance upon real property.' " *Id.* (citations omitted). Indeed, "[a]lthough . . . an inchoate right of dower cannot be properly denominated an estate in land, nor indeed a vested interest therein, . . . it is a substantial right, possessing in contemplation of law the attributes of property, and to be estimated and valued as such." *Bethell v. McKinney*, 164 N.C. 71, 75, 80 S.E. 162, 163 (1913).

> A wife's inchoate downer interest in her living husband's land was held to render her incompetent to testify in a suit involving title to his land. Though common law dower has been abolished, the

statutory scheme which replaced it seems to effect no change in the wife's status for this purpose.

Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 139, at 461-62 (6th ed. 2004).

In the case of *Linebarger v. Linebarger*, the caveators of a will sought to introduce testimony of the wife of one of the caveators concerning the testator's declarations. 143 N.C. 229, 55 S.E. 709 (1906). If the caveators prevailed, they would have acquired an interest in the real estate belonging to the testator. *Id.* at 231, 55 S.E. at 710. Our Supreme Court held, based on the wife's inchoate dower interest, that the wife "had an interest in the property dependent upon the result of the controversy and . . . was incompetent. The exception to the admission of her testimony must be sustained." *Id.* The Supreme Court based its holding on the dead man's statute as found in section 1631 of the Revised Code. *Id. See* Revised Code of North Carolina Ch. 34 § 1631 (1905). This statute was a predecessor to the current law embodied in Rule 601(c). The language of Section 1631 is identical to that found in Rule 601(c). *Linebarger* has not been overruled and is binding precedent. *See Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993) ("the Court of Appeals . . . has no authority to overrule decisions of [the] Supreme Court and [has] the responsibility to follow those decisions until otherwise ordered by the Supreme Court") (citation and internal quotation marks omitted).

In the instant case, plaintiff's wife's interest in Romer's real estate is the same as that of the witness in *Linebarger*. Plaintiff's wife has a direct legal interest in the property, thereby disqualifying her from testifying as to any oral communications between herself and Romer.

Plaintiff argues his wife's testimony was admissible under the holding of *Rape*, 287 N.C. 601, 215 S.E.2d 737. In *Rape*, the plaintiffs' father testified as to conversations he had with the deceased. Our Supreme Court affirmed the trial court's admission of the testimony, holding that where only personal property was at issue *Linebarger* was not applicable. *Id.* at 623-24, 215 S.E.2d at 751 (relying on *Helsabeck v. Doub*, 167 N.C. 205, 83 S.E. 241 (1914)).

In the case *sub judice*, Romer's estate includes substantial real estate holdings in this state. We therefore hold that plaintiff's wife was an "interested person" for purposes of Rule 601(c), and as a result, the trial court erred in admitting her testimony concerning oral communications she had with Romer. For these same reasons,

**TAYLOR v. ABERNETHY**

[174 N.C. App. 93 (2005)]

plaintiff's wife should not be allowed to testify as to any conversations she overheard between her husband and Romer concerning Romer's intent to leave everything to plaintiff. Plaintiff does not contend that the admission of his wife's testimony was harmless and had no prejudicial effect on the outcome of the trial. As this testimony was inadmissible, we order a new trial.

Based upon this holding, we need not address the remainder of appellant's arguments presented to this Court. However, because this case has already been tried twice and we are remanding it for a third jury trial, we address those arguments which are likely to recur in an effort to prevent future appeals.

**[2]** In defendant's first argument, he contends the trial court erred in admitting into evidence two letters from Romer to plaintiff, as well as the envelopes which contained those letters. Defendant further contends the trial court erred in allowing the full contents of one of the letters to be read to the jury since it constituted hearsay. We disagree.

Specifically, defendant assigns as error the admittance of: (1) Exhibit 1(a), which is an original handwritten letter from Romer to plaintiff dated 3 April 1958; (2) Exhibit 1, which is the original envelope postmarked 3 April 1958 in which Exhibit 1(a) was mailed; (3) Exhibit 2(a), which is an original handwritten letter from Romer to plaintiff dated 23 March 1958; (4) Exhibit 1, which is the original envelope postmarked 25 March 1958 in which Exhibit 1(a) was mailed; and (5) Exhibit 1(e), which were defendant's answers to plaintiff's request for admissions.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2004). Thus, an out-of-court statement or document is considered to be hearsay evidence and, as such, inadmissible when the sole purpose for its submission into evidence is to prove the very contents of that document. *Leak v. Leak*, 129 N.C. App. 142, 152, 497 S.E.2d 702, 707-08 (1998). However, "[s]tatements offered for other purposes are not hearsay." *State v. Smith*, 135 N.C. App. 649, 656, 522 S.E.2d 321, 327 (1999) (holding statements offered to explain subsequent conduct or corroborate prior testimony were not hearsay, and were therefore admissible). *See also State v. Coffey*, 326 N.C. 268, 282, 389 S.E.2d 48, 56-7 (1990) (holding statement offered to show basis for subsequent conduct was not hearsay); *State v. Gilbert*, 96 N.C. App.

363, 365, 385 S.E.2d 815, 816 (1989) (holding statement offered to corroborate testimony was not hearsay).

In the instant case, plaintiff offered the letters and their envelopes into evidence for the stated purpose of providing a sample of Romer's handwriting and signature, which the jury and the expert handwriting witnesses could compare to the signature on the contract to determine if Romer did in fact sign the contract to make a will. Plaintiff also offered these exhibits to corroborate Romer's plan or intent to make a will in favor of plaintiff, and rebut defendant's assertion that "Romer would never have signed anything like that." Furthermore, the letters were properly authenticated by one of Romer's nephew's, Chris Taylor, pursuant to Rule 901(b)(2) of the Rules of Evidence. N.C. Gen. Stat. § 8C-1, Rule 901(b)(2) (2004). Therefore, these letters were admissible. As such, it was proper for Chris Taylor to read one of them to the jury for the purpose of demonstrating Romer's motive in executing the contract to make a will, as well as corroboration of Romer's subsequent actions, that is, the execution of the contract. This argument is without merit.

[3] In defendant's fourth argument, he contends the trial court erred in allowing plaintiff's expert witness, Charles Perrotta, to give his opinion as to the genuineness of Romer Taylor's signature on the contract to make a will. We disagree.

Defendant suggests the trial court erred in permitting the handwriting expert to give his opinion that Romer's signature on the contract: (1) was not a tracing of Romer's signature done by someone else; (2) was not made by plaintiff; (3) was not made by plaintiff's son, Chris; and (4) was made by Romer and could not have been made by anyone other than him.

Trial courts are afforded wide latitude when determining the admissibility of expert testimony. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004). As such, "a trial court's ruling . . . on the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion." *Id.* In order to demonstrate that the trial court abused its discretion, the objecting party must show the court's ruling was so arbitrary that it could not have been the result of a reasoned decision. *Gregory v. Kilbride*, 150 N.C. App. 601, 612, 565 S.E.2d 685, 693 (2002), *disc. review denied*, 357 N.C. 164, 580 S.E.2d 365 (2003).

In our previous opinion in this case, we held this same expert witness, Perrotta, was qualified to give his opinion as to whether the

signature on the contract was Romer's after he met the factors set out in *State v. Goode*, 341 N.C. 513, 461 S.E.2d 631 (1995). *Taylor*, 149 N.C. App. at 274-75, 560 S.E.2d at 240. We found this to be true regardless of whether Perrotta's testimony amounted to an expert opinion on the ultimate issue to be determined by the jury. *Id.* at 272, 560 S.E.2d at 239.

When testifying, an expert may explain how he reached his final conclusion. *See* N.C. Gen. Stat. § 8C-1, Rule 705 (2004) ("expert may testify in terms of opinion or inference and give his reasons therefor . . ."). It was permissible for Perrotta to explain to the jury how he came to the conclusion that Romer signed the contract. Furthermore, in light of defendant's assertion that Romer's signature on the contract was a forgery, plaintiff was allowed to rebut that theory with expert testimony.

Defendant has failed to meet his burden of showing that the trial court abused its discretion in allowing the handwriting expert to opine as to the matters set forth above, and ultimately as to whether Romer signed the contract. This argument is without merit.

**[4]** In defendant's sixth argument, he contends the trial court erred when it prohibited him from testifying about conversations he had with the decedent, Romer. We disagree.

As stated above, Rule 601 disqualifies certain witnesses from testifying. *See* N.C. Gen. Stat. § 8C-1, Rule 601. Under Rule 601, a witness will be prohibited from giving testimony about conversations he had with the decedent where the witness is a party to the action or has a direct pecuniary interest in the event. *Etheridge*, 41 N.C. App. at 42, 255 S.E.2d at 738. Defendant is a party to this action. In addition, he has a direct legal, as well as a pecuniary interest in the outcome of the action because if the contract is found to be valid, the purported holographic will naming him as the sole beneficiary would be of no legal effect. Thus, it was proper for the trial court to prohibit defendant from testifying regarding conversations he had with Romer. This argument is without merit.

**[5]** In defendant's eighth argument, he contends the trial court erred by instructing the jury that the burden of proof was by the greater weight of the evidence and in submitting only one issue, whether Romer signed the contract, to the jury.

We initially note that plaintiff contends defendant is foreclosed by the "law of the case doctrine" from raising this issue on appeal

because he did not raise this issue on the first appeal. Our Supreme Court described this doctrine in *Tennessee—Carolina Transp., Inc. v. Strick Corp.*:

> As a general rule, when an appellate court passes on questions and remands the case for further proceedings to the trial court, the questions therein actually presented and necessarily involved in determining the case, and the decision on those questions become the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal, provided the same facts and the same questions, which were determined in the previous appeal, are involved in the second appeal.

286 N.C. 235, 239, 210 S.E.2d 181, 183 (1974) (citations and internal quotation marks omitted).

It is clear from our opinion in the first appeal of this case that defendant did not raise the issues of burden of proof and submission of the contract formation issue to the jury on cross-appeal. As such, they were not ruled on by this Court.

It appears there is a split of authority among the states as to whether the "law of the case doctrine" applies to "matters which arose prior to the first appeal and which might have been raised thereon but were not." 5 AM. JUR. 2D *Appellate Review* § 608 (1995). Plaintiff urges this Court to adopt this broader version of the "law of the case doctrine." We decline to do so.

We find no North Carolina cases adopting this expansive approach to this doctrine. To the contrary, our cases have specifically limited the doctrine to points actually presented and necessary for the determination of the case. *Creech v. Melnik*, 147 N.C. App. 471, 474, 556 S.E.2d 587, 589 (2001). In *Creech*, this Court held the law of the case doctrine did not apply to *dicta* contained in the prior appellate opinions of that case, but only to those issues which were in fact presented and necessary for deciding the case. *Id. See also Clayton v. Branson*, 170 N.C. App. 438, 443, 613 S.E.2d 259, 264 (2005); *Kanipe v. Lane Upholstery*, 151 N.C. App. 478, 484-85, 566 S.E.2d 167, 171 (2002).

We hold that defendant's failure to cross-appeal these issues in the first appeal does not preclude him from raising them in this appeal. These issues were not actually decided, nor were they necessary for our decision in the first appeal.

**[6]** We begin by addressing whether the trial court erred in instructing the jury that the burden of proof was by the greater weight of the evidence. Defendant contends that Pennsylvania law governs all aspects of the case due to the choice of law provision in the contract to make a will, which stated: "Pennsylvania law shall be applied in the construction and enforcement of this agreement." We interpret this to mean the substantive law of Pennsylvania would apply and not the procedural law, as the provision did not indicate the law of Pennsylvania would govern both the procedural and substantive law.

"The question of what is procedure and what is substance is determined by the law of the forum state." *Boudreau v. Baughman*, 322 N.C. 331, 339, 368 S.E.2d 849, 856 (1988). Where a lawsuit is filed in North Carolina regarding the validity of a contract made in another state, "[u]nquestionably the law of the forum, North Carolina, governs all matters of procedure." *Arnold v. Charles Enterprises*, 264 N.C. 92, 96, 141 S.E.2d 14, 17 (1965). In addition, the determination of the applicable burden of proof is a procedural matter, thus, it too is controlled by the law of the forum state. *Id.* at 98, 141 S.E.2d at 18. Accordingly, the trial court did not err in instructing the jury that the burden of proof was by the greater weight of the evidence as this is the correct standard under North Carolina law. *In re Rogers*, 297 N.C. 48, 59, 253 S.E.2d 912, 919 (1979) (noting the burden of proof in civil cases is by the greater weight of the evidence).

**[7]** We next address whether the trial court erred in refusing to instruct the jury on the essential elements necessary for the formation of a valid contract, such as whether there was an offer, acceptance, and valid consideration. Defendant contends the trial court impermissibly took the presumption of validity, which arose due to the fact the contract to make a will was signed, notarized, and recorded, and turned it into an unyielding conclusion.

As the validity of a contract is a substantive question, the law of Pennsylvania controls. *See Land Co., v. Wood*, 40 N.C. App. 133, 136-37, 252 S.E.2d 546, 550 (1979) (ruling the validity of a contract, as well as issues of its execution and interpretation are determined by the law of the place where it is made, thereby they are substantive issues). Plaintiff filed this lawsuit seeking the enforcement of a contract. " '[A] contract to make a will . . . must be established by proof of an offer, an acceptance and legal consideration.' " *Hatbob v. Brown*, 575 A.2d 607, 609 (Pa. Super. 1990) (quoting *Fahringer v. Strine Estate*, 216 A.2d 82, 85-86 (Pa. 1966)).

Although the substantive law of Pennsylvania governs issues concerning the validity of the contract, North Carolina law governs certain presumptions that arise from the execution and recordation of the contract at issue since this is a procedural matter. *See Knight v. Associated Transport*, 255 N.C. 462, 464, 122 S.E.2d 64, 66 (1961) (noting "the methods by which the parties are required to prove their allegations, such as the rule of evidence, and the quantum of proofs necessary to make out a *prima facie* case are matters of procedure governed by the law of the place of trial"); *Jacobsen v. McMillan*, 124 N.C. App. 128, 133, 476 S.E.2d 368, 371 (1996) ("a presumption is merely an evidentiary rule").

Since the contract to make a will was notarized and recorded, this raised a presumption of due execution. *See Williams v. Board of Education*, 284 N.C. 588, 598, 201 S.E.2d 889, 895 (1974). Although plaintiff, as the party seeking to enforce the contract, has the burden of proving the essential elements of a valid contract, *Orthodontic Ctrs. of Am., Inc., v. Hanachi*, 151 N.C. App. 133, 135, 564 S.E.2d 573, 575 (2002), defendant, as the party attacking the validity of the contract on the basis of non-execution, has the burden of rebutting that presumption. *Johnson v. Johnson*, 229 N.C. 541, 545-46, 50 S.E.2d 569, 572-73 (1948). Rule 301 of our Rules of Evidence provides the guidelines for a trial court when instructing the jury regarding a presumption. The presumptions referred to in Rule 301 relate to mandatory presumptions. *See* N.C. Gen. Stat. § 8C-1, Rule 301 official commentary (2005). A mandatory presumption arises when, upon proof of a basic fact, " 'the presumed . . . fact *must* be found unless sufficient evidence of its nonexistence is forthcoming.' " *Dobson v. Harris*, 352 N.C. 77, 82 n.3, 530 S.E.2d 829, 835 n.3 (2000) (quoting Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 44, at 148 (5th ed. 1998)). However, when the other party presents evidence rebutting the mandatory presumption it disappears, leaving only a mere permissive inference. *State v. Williams*, 335 N.C. 518, 521, 438 S.E.2d 727, 729 (1994). A permissive inference permits, but does not require, the jury to infer the presumed fact from the basic fact proven. *Dobson*, 352 N.C. at 82 n.3, 530 S.E.2d at 835 n.3.

In the instant case, defendant put on evidence sufficient to rebut the presumption of due execution. Accordingly, the trial court erred when it took the presumption in favor of validity and found that "[b]ased on the evidence presented and the verdict of the jury, the Court concludes as a matter of law that Plaintiff's Exhibit A is a valid and sufficient contract to make a will . . . ." By making such

a finding, the trial court acted as the fact finder, thus invading the province of the jury.

Furthermore, the presumption in question goes to the issue of whether the document was properly executed, not whether it contained the elements necessary to be an enforceable contract. Regardless of the fact the contract to make a will was notarized and recorded, plaintiff still had the burden of establishing there was an offer, acceptance, and due consideration.

Defendant requested that the trial court submit the issue as to whether plaintiff had established all the elements for an enforceable contract, including whether there existed legal consideration. The trial judge refused, and in doing so, erred in failing to submit this issue to the jury.

We remand this matter for a new trial. We caution the lower court that upon remand this new trial is to be conducted based on the evidence presented at *that* trial. This evidence may or may not be the same as that presented at the previous trial. It is not the role of the trial judge upon retrial to follow the path taken by the judge in the previous trial. The judge must submit issues to the jury based on the evidence presented at the current trial.

REVERSED AND REMANDED.

Judges WYNN and HUDSON concur.