THOMAS D. SALTER, Plaintiff-Appellant,
v.
EUGENE R. WILLIS, MAGGIE WILLIS, RAMONA S. WILLIS, RICHARD D. WILLIS, Defendants-Appellees.
No. COA07-1059
Court of Appeals of North Carolina
Filed August 5, 2008
This case not for publication
Wheatly, Wheatly, Weeks & Lupton, P.A., by Claud R. Wheatly, Jr. and Claud R. Wheatly, III, for Plaintiff-Appellant.
Mason & Mason, P.A., by L. Patten Mason, for Defendants-Appellees Ramona S. Willis and Richard D. Willis.
No brief for Defendants-Appellees Eugene R. Willis and Maggie
Willis.
McGEE, Judge. [OJ]
Defendant Eugene R. Willis (Eugene) and William Monroe Willis (Monroe), now deceased, were brothers. Defendant Ramona S. Willis (Ramona) is Monroe's widow. Ramona and Monroe have a son, Defendant Richard D. Willis (Richard). Eugene is married to Maggie Willis (Maggie). Thomas D. Salter (Plaintiff) is Eugene and Maggie's grandson. Plaintiff is married to Judy Salter (Ms. Salter).
Monroe, Ramona, Eugene, and Maggie purchased a tract of landin 1964 from the parents, aunts and uncles of Monroe and Eugene (the Willis grantors). The deed (the Willis deed) describes a parcel of land of about twenty-eight acres. However, the Willis grantors did not actually own all twenty-eight acres described in the Willis deed. Rather, they owned a tract of approximately five and three-tenths acres (the Willis tract). The remainder of the twenty-eight acres described in the Willis deed was either owned by other persons or consisted of marsh, wetlands, or uplands.
Plaintiff graduated from high school in 1977 and started a seafood business, Drum Inlet Seafood Company (DISC), with Eugene and Monroe. Plaintiff and Eugene both testified at trial that DISC began as a three-person partnership, with profits divided evenly among Plaintiff, Eugene, and Monroe.[1] According to both Plaintiff and Eugene, the three men eventually became interested in acquiring the remainder of the land described in the Willis deed, and purchased two additional tracts of land. The first purchase is reflected in a deed dated 28 March 1986. The deed (the Palazzo deed) lists the first grantor as Mary Palazzo and lists the grantees as "Eugene R. Willis And W. Monroe Willis . . . Tenants in Common as to a one-half undivided interest each[.]" The tract of land conveyed by the Palazzo deed (the Palazzo tract) consists of approximately three and six-tenths acres. The second purchase is reflected in a deed dated 2 July 1987. The deed (the Hatcher deed)lists the first grantor as Joyce Mason Hatcher, and lists the grantees as "Eugene R. Willis and William Monroe Willis . . . as tenants in common[.]" The tract of land conveyed by the Hatcher deed (the Hatcher tract) consists of approximately five acres. The Willis tract, the Palazzo tract, and the Hatcher tract together comprise approximately thirteen and nine-tenths acres. All three tracts lie within the twenty-eight acres described in the Willis deed, and none of the three tracts overlap.
Although the Palazzo and Hatcher deeds list only Eugene and Monroe as grantees, Plaintiff claims that the three men intended for the Palazzo and Hatcher tracts to be owned by Plaintiff, Eugene, and Monroe equally, each with a one-third interest. Plaintiff claims that the Palazzo and Hatcher tracts each were purchased with partnership profits, and that DISC initially also paid taxes on the various properties. According to Eugene, the grantees on the Palazzo and Hatcher deeds "should have been Eugene Willis, Monroe Willis and Thomas Salter because Tommy Salter was in [DISC] with us." Further, Eugene claimed that he and Monroe never changed the deeds to include Plaintiff as a grantee because "we were in a family. . . . I thought it would be all right if we just left the name just Eugene and Monroe[.]"
Monroe died in 2002 and devised his assets to his wife, Ramona. Plaintiff alleges that following Monroe's death, Plaintiff, Eugene, and Richard, acting as general power of attorney for his mother, Ramona, decided to sell the thirteen and nine-tenths acres of land consisting of the Willis, Palazzo, and Hatchertracts. During the process of selling the land, Richard informed Plaintiff that pursuant to the grantee names listed on the Willis, Palazzo and Hatcher deeds, Ramona owned her late husband's one-half interest in the land, Eugene owned the remaining one-half interest in the land, and Plaintiff owned nothing. Plaintiff disagreed, claiming that despite the omission of his name from the various deeds, he, Ramona, and Eugene each owned a one-third interest in the land, pursuant to the earlier agreement between Plaintiff, Eugene, and Monroe. The parties eventually sold the land to Lawrence Zucchino (Mr. Zucchino) through a series of deeds, including: (1) a general warranty deed dated 13 December 2005 listing as grantors Eugene, Maggie, and Ramona, and listing as grantee Mr. Zucchino; (2) a quitclaim deed dated 13 December 2005 listing Richard as the grantor and Mr. Zucchino as the grantee; and (3) a quitclaim deed dated 13 December 2005 listing Plaintiff as the grantor and Mr. Zucchino as the grantee. The disputed portion of the purchase money was placed in escrow pending the result of the present litigation.
Plaintiff filed a complaint against Ramona and Richard (together Defendants) on 14 October 2005.[2] Plaintiff alleged in his complaint that he, Eugene, and Monroe used partnership funds that had not been distributed to the partners to purchase the Palazzo and Hatcher tracts. Plaintiff further alleged that despite the fact that he was not listed as a grantee on the Palazzo and Hatcher deeds, he, Monroe, and Eugene agreed and understood that each of them would own a one-third undivided interest in the entire land, including the five-and-three-tenths-acre portion conveyed by the Willis deed.
Plaintiff filed a motion for summary judgment on 3 October 2006 with respect to his ownership in all lands at issue, "especially as to those tracts described in [the Palazzo and Hatcher] deeds[.]" In his motion, Plaintiff argued that the pleadings and affidavits demonstrated that "the grantees named in the [Palazzo and Hatcher] deeds were Eugene R. Willis and William Monroe Willis, who would be Trustees for the said three (3) owners." Defendants also filed a motion for partial summary judgment on 12 October 2006. Defendants' motion stated:
[Defendants] move the Court to grant them Partial Summary Judgment showing and declaring that [Plaintiff] is not an owner and does not have any interest in the property acquired by [Eugene, Maggie, Monroe, and Ramona] by [the Willis] Deed . . . on the grounds that . . . Plaintiff can show no written agreement sufficient to satisfy the Statute of Frauds that said property became a partnership asset[.]
Judge W. Allen Cobb, Jr. (Judge Cobb) entered an order on 24 October 2006 denying Plaintiff's motion for summary judgment. Judge Cobb also entered an order on 24 October 2006 granting Defendants' motion for partial summary judgment. Specifically, Judge Cobb decreed that Plaintiff "has no ownership interest in the lands which were acquired by [Monroe and Ramona] in the [Willis] Deed[.]" This action was called for trial on 22 May 2007 with Judge Benjamin G. Alford presiding. Plaintiff's evidence at trial purported to show that although Plaintiff's name was not on the Hatcher and Palazzo deeds, Monroe and Eugene had both intended that Plaintiff be a one-third owner of the Hatcher and Palazzo tracts. Plaintiff's evidence also purported to show that a parol trust had been created in favor of Plaintiff with respect to one-third of the Hatcher and Palazzo tracts.
At the close of Plaintiff's evidence, Defendants moved for a directed verdict. Defendants argued that they were entitled to a directed verdict on three separate grounds, including: (1) Plaintiff failed to introduce sufficient evidence of a parol trust; (2) Plaintiff was not the real party in interest; and (3) summary judgment had already determined that Plaintiff had no ownership interest in any of the properties at issue.
Defendants' third basis for a directed verdict centered around a dispute regarding the proper interpretation of Judge Cobb's 24 October 2006 order granting partial summary judgment in favor of Defendants. Defendants argued that Judge Cobb had ruled that Plaintiff had no interest in the property described in the Willis deed and, because the Palazzo and Hatcher tracts were located within that description, Plaintiff likewise had no ownership interest in the Palazzo and Hatcher tracts. Plaintiff disagreed with Defendant's interpretation of Judge Cobb's order. Specifically, Plaintiff argued that Judge Cobb's order granted partial summary judgment with respect to only the land actually conveyed by the Willis deed, which did not include the Hatcher or Palazzo tracts. According to Plaintiff, Defendants were trying to "mak[e] partial summary [judgment] a total summary [judgment,] which it isn't." Plaintiff further argued that his evidence was sufficient to establish a parol trust in favor of Plaintiff with respect to the Hatcher and Palazzo tracts.
After hearing the parties' arguments, the trial court granted Defendants' motion for a directed verdict on the sole basis that Judge Cobb's partial summary judgment order should have been a full summary judgment order because it established that Plaintiff had no ownership interest in any of the properties at issue:
I guess I just have a real serious disagreement with [P]laintiff's contention as to the wording of the Order granting partial summary judgment because I don't think it could be clear when it said that [Plaintiff] in this case has no ownership interest in the lands described in this deed.
. . . [T]he description of [the] property [in the Willis deed] encompasses [all property in which Plaintiff claims an ownership interest,] and in accordance therewith, the motion for directed verdict is allowed.
I don't know why it's a partial summary judgment and I've been  Anyway, that's the ruling of the Court.
The trial court did not address Defendants' alternative bases for a directed verdict. The trial court entered judgment on 1 June 2007 decreeing that Plaintiff had no ownership interest in any of the lands at issue in this litigation. Plaintiff appeals.

I.
Plaintiff first argues that the trial court erred by granting a directed verdict in favor of Defendants. A trial court should grant a directed verdict for a defendant if the plaintiff's evidence, taken in the light most favorable to the plaintiff, is insufficient as a matter of law to be submitted to a jury. Davis v. Dennis Lilly Co., 330 N.C. 314, 322-23, 411 S.E.2d 133, 138 (1991). We review a trial court's grant of a motion for a directed verdict de novo. Herring v. Food Lion, LLC, 175 N.C. App. 22, 26, 623 S.E.2d 281, 284 (2005), aff'd, 360 N.C. 472, 628 S.E.2d 761 (2006) (per curiam).
Plaintiff contends that the trial court issued a directed verdict due to a misinterpretation of Judge Cobb's order granting partial summary judgment in favor of Defendants. Plaintiff argues that Judge Cobb's partial summary judgment order only held that Plaintiff had no ownership interest in the five-and-three-tenths acres actually conveyed by the Willis deed, and did not address Plaintiff's ownership interest in the Palazzo and Hatcher tracts. Defendants disagree and contend that Judge Cobb's partial summary judgment order "determined that Plaintiff had no interest in the property described in the [Willis] deed or which [Monroe and Ramona] acquired in this deed."
Where parties have disagreed over the proper interpretation of court orders, we have noted that "[j]udgments must be interpreted like other written documents, not by focusing on isolated parts, but as a whole. The interpreting court must take into account the pleadings, issues, the facts of the case, and other relevant circumstances." Reavis v. Reavis, 82 N.C. App. 77, 80, 345 S.E.2d 460, 462 (1986). Given the facts and circumstances of this case, including Judge Cobb's contemporaneous order denying Plaintiff's motion for summary judgment, we conclude that the trial court erred in its interpretation of Judge Cobb's partial summary judgment order.
As discussed above, the record in this case demonstrates that while the Willis deed described a twenty-eight-acre parcel of land, the Willis grantors only owned a five-and-three-tenths-acre portion of that land. The remainder of the land described in the Willis deed consisted of the Palazzo tract and the Hatcher tract, which the Willis grantors did not own, and marshes, uplands, and wetlands whose ownership is not clear from the record. Therefore, while the Willis deed described a large parcel of land, it only conveyed five and three-tenths acres of that land to Monroe, Eugene, and their respective spouses. Monroe and Eugene did not acquire title to the Palazzo and Hatcher tracts until they purchased those tracts in 1986 and 1987.
The record reflects that Plaintiff moved for summary judgment with respect to all lands at issue, but "especially" as to the Hatcher and Palazzo tracts. Defendants, however, only moved for partial summary judgment with respect to "the property acquired" by Monroe, Ramona, Eugene, and Maggie in the Willis deed. In contemporaneously issued orders, Judge Cobb both denied Plaintiff's motion and granted Defendants' motion. Judge Cobb found that Plaintiff "has no ownership interest in the lands which were acquired" by Monroe, Ramona, Eugene, and Maggie in the Willis deed, but also found that genuine issues of material fact existed with respect to the issues set out in Plaintiff's summary judgment motion, namely, whether Plaintiff had any interest in the Hatcher and Palazzo tracts. The plain language of Judge Cobb's orders makes clear that Judge Cobb intended to grant summary judgment in favor of Defendants with respect to the Willis tract, but not with respect to the Palazzo or Hatcher tracts. Any other reading of Judge Cobb's orders would render them inconsistent with one another.
This interpretation of Judge Cobb's orders also makes sense given Defendants' legal argument in their motion for partial summary judgment. Defendants argued in their motion that "Plaintiff can show no written agreement sufficient to satisfy the Statute of Frauds that [the Willis tract] became a partnership asset[.]" In Ludwig v. Walter, 75 N.C. App. 584, 331 S.E.2d 177 (1985), this Court held that "land owned individually by one who enters into a partnership cannot become a partnership asset absent some written agreement sufficient to satisfy the Statute of Frauds." Id. at 586, 331 S.E.2d at 179. Of the three tracts of land at issue, Monroe and Eugene owned only the Willis tract prior to entering into the partnership with Plaintiff. Therefore, Defendants' legal argument would have been inapplicable to either the Hatcher or Palazzo tracts. Judge Cobb recognized as much in his partial summary judgment order, where he stated that Plaintiff had no interest in the Willis tract due to his inability to satisfy the statute of frauds with respect to that piece of land. Based on the facts, issues, and other circumstances surrounding this case, we find that the trial court erred by directing a verdict in favor of Defendants based on an erroneous interpretation of Judge Cobb's prior summary judgment orders.[3] We therefore reverse the trial court's judgment in this case and remand for a new trial on the issues presented in Plaintiff's complaint. We note that Plaintiff did not assign error to Judge Cobb's order granting partial summary judgment in favor of Defendants on the basis that Plaintiff was unable to show a written agreement sufficient to satisfy the statute of frauds that the Willis tract became a partnership asset. Therefore, the issues to be decided in Plaintiff's new trial are limited to those concerning Plaintiff's interest in the Hatcher and Palazzo tracts.

II.
Plaintiff's appeal raises additional issues likely to recur upon retrial. We therefore address these additional issues.
Plaintiff argues that the trial court erred by excluding evidence regarding certain discussions that occurred among Plaintiff, Monroe, and Eugene regarding the purchase and ownership of the Hatcher and Palazzo tracts. On direct examination, Eugene testified as follows:
[PLAINTIFF'S COUNSEL]: [W]as there any discussion about the purchase of [the Hatcher and Palazzo tracts]?
. . . .
[EUGENE]: Oh yes, we talked about it. The three of us talked about the land and _
[PLAINTIFF'S COUNSEL]: Who talked about it?
[EUGENE]: Thomas Salter and Monroe Willis and myself.
[PLAINTIFF'S COUNSEL]: And what did you agree to do?
[DEFENSE COUNSEL]: Objection.
[THE COURT]: Sustained.
Eugene later testified on voir dire that he, Plaintiff, and Monroe had previously discussed purchasing the remainder of the land described in the Willis deed, and they had agreed to jointly purchase the Hatcher and Palazzo tracts. The trial court excluded this evidence under North Carolina's "dead man statute," N.C. Gen. Stat. § 8C-1, Rule 601(c). The trial court also excluded testimony from Jeffrey Gilley (Mr. Gilley), a former DISC employee, on similar grounds:
[PLAINTIFF'S COUNSEL]: What discussions did you hear concerning this purchase of property that was had between Monroe Willis, Eugene Willis and Tommy Salter?
[DEFENSE COUNSEL]: Objection.
[THE COURT]: Sustained as to any conversations with Monroe Willis. You may testify as to any discussions you heard between Tommy Salter and Eugene Willis.
The trial court also excluded testimony from Plaintiff's wife, Ms. Salter, regarding conversations she overheard among Plaintiff, Monroe, and Eugene regarding the land purchases at issue. The trial court did, however, allow Ms. Salter to testify regarding conversations involving only Plaintiff and Eugene.
Plaintiff argues that the trial court erred by excluding testimony from these witnesses under Rule 601(c). Rule 601(c) provides:

Disqualification of interested persons.  Upon the trial of an action . . . a party or a person interested in the event, or a person from, through or under whom such a party or interested person derives his interest or title by assignment or otherwise, shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest, against the executor, administrator or survivor of a deceased person . . . concerning any oral communication between the witness and the deceased person[.]
N.C. Gen. Stat. § 8C-1, Rule 601(c) (2007).
We first consider whether the trial court properly excluded Eugene's testimony. Plaintiff argues that Rule 601(c) did not bar Eugene's testimony because Eugene was testifying against his own interest. Defendants respond that because Eugene was a party to the action, he was per se disqualified under Rule 601(c). We agree with Plaintiff's contention. The plain language of Rule 601(c)indicates that even if a witness is a party to the action, the witness is incompetent only if the witness testifies in his own behalf or interest. See 1 Brandis & Broun on North Carolina Evidence § 141 (6th ed. 2004) (stating that "[e]ven though a witness [is a party], his incompetency extends only to being `examined as a witness in his own behalf or interest. . . .' Consequently a witness may always testify against his own interest regardless of the subject matter of the witness's testimony or his relation to the parties[.]" (emphases omitted)). Had Eugene been permitted to testify, his testimony would have demonstrated that he had only a one-third interest in the disputed real properties, rather than the one-half interest indicated on the face of the various deeds. Indeed, Defendants do not dispute that Eugene's testimony, had it been allowed, would have been against Eugene's own self-interest. Therefore, despite Eugene's status as a party-defendant, he was not disqualified under Rule 601(c) and should be permitted to testify at trial on remand regarding any communications with Monroe involving the purchase and ownership of the Hatcher and Palazzo tracts. See, e.g., In re Will of Barnes, 157 N.C. App. 144, 152-53, 579 S.E.2d 585, 590-91 (2003) (holding that a beneficiary under the decedent's will was not incompetent to testify under Rule 601(c) regarding oral communications between the decedent and another will beneficiary because the witness's testimony, if believed, would have reduced the witness's own inheritance), rev'd on other grounds, 358 N.C. 143, 592 S.E.2d 688 (2004). We next consider whether the trial court properly excluded Mr. Gilley's testimony. Plaintiff argues that Mr. Gilley was not a party to the lawsuit and had no interest in the lawsuit, and therefore was not incompetent under Rule 601(c). Defendants do not dispute Plaintiff's contention. We likewise agree that Mr. Gilley was not disqualified under Rule 601(c) and should be permitted to testify at trial on remand regarding any communications he overheard among Plaintiff, Eugene, and Monroe.
Finally, we consider whether the trial court properly excluded Ms. Salter's testimony. Plaintiff argues that even though Ms. Salter is Plaintiff's wife, this alone does not make her a person interested in the litigation for purposes of Rule 601(c). See Burton v. Styers, 210 N.C. 230, 231, 186 S.E. 248, 249 (1936) (stating that "the prohibition against the testimony of a `person interested in the event' extends only to those having a `direct legal or pecuniary interest,' and not to the sentimental interest the husband or wife would naturally have in the lawsuit of the other") (citations omitted). Even though we agree with Plaintiff's general contention, our Court has recognized that a witness-spouse does have a direct legal interest in litigation where the litigation concerns the ownership rights of the party-spouse in real property. See Taylor v. Abernethy, 174 N.C. App. 93, 97-98, 620 S.E.2d 242, 246-47 (2005), cert. denied, 360 N.C. 367, 630 S.E.2d 454 (2006) (holding that a witness-spouse's inchoate elective-share interest in her living party-spouse's real estate under N.C. Gen. Stat. § 29-30 is a direct legal interest sufficient to disqualify the witness-spouse under Rule 601(c)). We therefore hold that the trial court properly excluded Ms. Salter's testimony regarding conversations she overheard among Plaintiff, Monroe, and Eugene. Such testimony should likewise be excluded upon remand.
Based on the above, we do not address Plaintiff's remaining assignments of error.
Reversed and remanded.
Judges WYNN and CALABRIA concur.
Report per Rule 30(e).
NOTES
[1] The record indicates that Eugene retired from the partnership around 1988. After Eugene's retirement, Plaintiff and Monroe incorporated DISC, with Plaintiff owning half of the corporation and Monroe and Ramona each owning one quarter. Monroe and Ramona later sold their shares of DISC to Plaintiff.
[2] Eugene and Maggie were also named as defendants in Plaintiff's lawsuit. However, Eugene filed an answer admitting all allegations in Plaintiff's complaint and has at all times agreed that Plaintiff is entitled to one-third of the proceeds of the sale of the properties at issue.
[3] Plaintiff also argues that the trial court erred by granting Defendants a directed verdict based on Plaintiff's failure to establish a parol trust. Defendants argue that the trial court properly granted a directed verdict on the parol trust issue, and further argue that a directed verdict was proper because Plaintiff was not the real party in interest. A review of the trial transcript and judgment, however, clearly demonstrates that the trial court only granted Defendants' directed verdict motion on the third basis argued by Defendants, which concerned Judge Cobb's prior summary judgment orders. The trial court never ruled on Defendants' remaining two grounds for a directed verdict. Defendants have not cross-assigned as error the trial court's failure to rule on their remaining grounds for a directed verdict. Therefore, these arguments are not properly before our Court at this time. See N.C.R. App. P. 10(d) ("an appellee may cross-assign as error any action or omission of the trial court which was properly preserved for appellate review and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken").